Merrimack, ⎫
May 7, 1935. ⎭

EDWARD T. BRAHMEY *v.* AMYLITTA GARDNER ROLLINS *& a.*

*James A. Broderick* (by brief and orally), for the plaintiff.

*Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Piper* orally), for the defendant debtor.

*Benjamin W. Couch,* for the defendant trustee, filed no brief.

ALLEN, C. J. As stated in the defendant's brief, the issue presented is whether the provisions of the trust instrument against alienation and seizure by creditors are valid when the trustee's duty to pay to the beneficiary is absolute. It is conceded that in the cases of spendthrift trusts hitherto decided here the trustee's obligation to pay is only discretionary. But it is contended that their thought and reasoning in sustaining a spendthrift character of the trusts therein considered show no difference in principle when the trustee's duty to pay is fixed and when it is dependent.

Whether the creditor has sought to have the trustee charged by trustee-process or by a creditor's bill, the court has in no case committed itself to a recognition of the validity of a spendthrift trust to the extent now claimed.

The cases where trustee-process has been held unavailable are readily explainable upon the rule that the trustee is not chargeable while the claim against him is unliquidated or undetermined in amount (*Gove* v. *Varrell,* 58 N. H. 78; *Bucklin* v. *Powell,* 60 N. H. 119; *Eastman* v. *Thayer,* 60 N. H. 575). When the trustee is to pay the beneficiary in discretion, he is not required to use his discretion either before or at the time of giving his disclosure in the creditor's behalf. The duty to act is owed only to those equitably interested in the trust. The disclosure may show some part of the income undoubtedly due the beneficiary but it cannot be told definitely how much. The trustee may not even disclose an amount which must at least be owing. When "the exercise of judgment, discretion, and opinion, and not mere calculation or computation" is required to determine the amount of a claim, it is unliquidated. *Eastman* v. *Thayer, supra,* 606. Moreover, the staking of reasonable limits is a matter of judicial inquiry. *Eaton* v. *Eaton,* 82 N. H. 216, 219, and cases cited. Thus clearly the trustee owes nothing until he performs his duty of fixing the amount or he owes an undetermined amount. In either alternative creditors hold nothing by the trustee-process.

The trustee-process cases are also sustainable on the view that the beneficiary's rights are not "credits," as the word is used in the trustee-process statute (P. L., c. 356, s. 19), in the trustee's possession. The entire trust estate, both principal and income, belongs to the trustee. *Abbott* v. *Abbott,* 76 N. H. 225. The beneficiary's right is that the trustee shall perform a duty to decide how much he is entitled to and then pay it. ". . . what he gave his son was the right to require the

trustee to use this fund for his benefit. . ." *Eaton* v. *Eaton*, 81 N. H. 275, 276. The right is not a credit making the trustee a debtor.

In none of these cases was there a provision of the trust instrument placing the equitable life interest beyond the reach of creditors, to be considered. There was simply the holding that the beneficiary's rights were not to be reached by trustee-process. Either it was because the beneficiary had no credits in the trustee's possession or it was because if credits they were undetermined in amount.

The case of *Chase* v. *Currier*, 63 N. H. 90, it is asserted, adopts the spendthrift trust idea "to the fullest extent." This view of it is not thought to be correct. A left money to B "to be prudently used if needed by him for his support," any of the fund remaining at his death to go to others. The court held that a trust was created, with no trustee named, and that one should be appointed to hold the fund with discretion to determine B's needs. The fund belonged to the remaindermen named by A, subject to B's right of support from it. It is a typical discretionary case in which trustee-process does not lie. Beyond this it does not go.

The case of *Wolfman* v. *Webster*, 77 N. H. 24, is no different in principle. The trustee had discretionary authority to pay income for the needs and comfort of the beneficiary. Regarding it as broad enough to include discretionary payment of some of the latter's debts, the court held that a proper exercise of the discretion in refusing to pay a debt due the plaintiff placed him beyond reach of the income by trustee-process. The creditor thus stood no better than creditors in cases where the income may be used only for the beneficiary's support.

In both of these cases *Banfield* v. *Wiggin*, 58 N. H. 155 is cited as supporting authority. There it was ruled that a trustee vested with discretion "as to the time, amount, or manner of the payment to be made" cannot be charged in trustee-process. Also, in that case in turn, a *dictum* in *Palmer* v. *Noyes*, 45 N. H. 174, was relied upon to the effect that trustees with discretionary powers in acting for the beneficiary's interest are not chargeable.

In *Watson* v. *Kennard*, 77 N. H. 23, decided at the same time as *Wolfman* v. *Webster, supra*, the test of discretion was distinctly applied. The life beneficiary had interests in both the income and the principal. Those in the principal were to be supported from it if the trustee deemed it necessary. The case turned on the question whether his right to the income was absolute or whether it was, like the principal, to be paid in the trustee's discretion.

The trustee-process cases are therefore of no forceful pertinence in

application to cases where the right to the income is uncontrolled by the trustee's discretion.

In *Abbott* v. *Abbott*, 76 N. H. 225, and *Parker* v. *Carpenter*, 77 N. H. 453, the beneficiary's rights were held not subject to seizure for the reason that they were of personal enjoyment within the trustee's discretion.

*Eaton* v. *Eaton*, 81 N. H. 275 (*Ib.*, 82 N. H. 216), is a case similar to *Chase* v. *Currier*, *supra*. Property was bequeathed to certain persons subject to be used for the benefit of the testator's son as his needs required. The son's right of support gave neither him nor his creditors any rights or interests of title, either legal or equitable. The purpose of the testator to place the property "beyond the reach not only of his son but also of his son's creditors" was thereby achieved. But it was because no absolute rights were given the son. The case makes no advance beyond others in the extension of spendthrift trusts.

By way of *dictum*, in *Flanders* v. *Parker*, 80 N. H. 566, 569, the proposition that any restraint of voluntary or involuntary alienation of a legal or equitable estate of an absolute nature is void, was given approval. It at least indicates that none of the decisions in discretionary cases has a background of dissent from the proposition. That there has been any adjudicated consideration of the rule, may not fairly be maintained.

It is said, however, that no rational distinction exists between cases of discretion and those without it.

It is thought there is a wide difference between provision limited to support or specific personal use and the grant of an annuity usable for any purpose. The right to support is more closely allied with personal than with property rights. It is on a par with the right of personal occupancy, and is comparable with the right to receive service. It is a right to have something done for one's strictly personal benefit. It is not assignable and may not be seized. The annuity is a property right. It is assignable and may be seized. In the provision for support protection from distress is secured. In the grant of an annuity which may be neither assigned nor seized, immunity from debts to be paid therefrom is sought. The distinction is between avoidance and escape. When property is given for a defined purpose, its use otherwise is avoided. The fact that the deprivation of other use is a part of the scheme is not detrimental to the validity and integrity of the prescribed use. When property is given without restriction of use, an attempt to bar a consequence

of ownership is to seek an avenue of escape. The contrast is substantial both in principle and practical application.

In passing on the merits of provisions against the assignment or seizure of an equitable life estate as matters of new impression, the theory that equity may determine the incidents of estates of its own creation is the source of their support. The theory has been stated in an English case in this language: "The power [to prohibit anticipation] . . . could only have been founded upon the power of this court to model and qualify an interest in property which it had itself created, . . . The separate estate and the prohibition of anticipation are equally creatures of equity, and equally inconsistent with the ordinary rules of property. The one is only a restriction and qualification of the other . . . It being once settled that a wife might enjoy separate estate as a feme *sole*, the laws of property attached to this new estate; and it was found, as part of such law, that the power of alienation belonged to the wife, and was destructive of the security intended for it. Equity again interfered, and by another violation of the laws of property, supported the validity of the prohibition against alienation." *Tullett* v. *Armstrong*, 4 M. & C. 377.

It is to be noted that the English view does not bar creditors when the beneficiary's interest is an absolute one. "The line on which the [English] cases divide is clear and distinct and is simply this: Has the *cestui* such vested interest, or such absolute property rights that he can force the trustee to pay him or deliver goods or property to him? If he has such interest the assignee or creditor can obtain it, and if he has not, the assignee or creditor can obtain nothing. The point is, not that one cannot be given an interest that will be beyond the reach of his creditors, but rather that one cannot be given an absolute property interest that will be beyond the reach of those creditors. This absolute property interest is the interest spoken of when it is said that a *cestui's* interest is subject to the demands of his creditors." Pomeroy, Eq. Juris., (3d *ed.*), *pp.* 1842, 1843 *n.*

But in this country the rights of ownership, or their assumed rights, have been extended so that provisions restraining voluntary alienation and seizure are both valid. The settlor's rights are held paramount. Quoting from *Broadway Nat'l Bank* v. *Adams*, 133 Mass. 170: "The founder of this trust was the absolute owner of his property. He had the entire right to dispose of it, either by an absolute gift . . . , or by a gift with such restrictions or limitations, not repugnant to law, as he saw fit to impose. His clear intention, . . . was not to give his brother an absolute right to the income which might here-

after accrue upon the trust fund, with the power of alienating it in advance, but only the right to receive semiannually the income of the fund, which upon its payment to him, . . . was to become his absolute property . . . .

"We do not see why the founder of a trust may not directly provide that his property shall go to his beneficiary with the restriction that it shall not be alienable by anticipation, and that his creditors shall not have the right to attach it in advance, instead of indirectly reaching the same result by a provision for a cesser or a limitation over, or by giving his trustees a discretion as to paying it . . . Under our system, creditors may reach all of the property of the debtor not exempted by law, but they cannot enlarge the gift of the founder of a trust, and take more than he has given.

"The rule of public policy which subjects a debtor's property to the payment of his debts, does not subject the property of a donor to the debts of his beneficiary, and does not give the creditor a right to complain that, in the exercise of his absolute right of disposition, the donor has not seen fit to give the property to the creditor, but has left it out of his reach."

This analysis is thought to be unsound, at least so far as relates to seizure. It confuses income with the right to it, and places absolute rights on the same basis as dependent ones, by the rather glaring error of holding that the beneficiary has no absolute rights except to income he has received. It is true that the income of a trust fund, as well as the principal, belongs in title to the trustee. The beneficiary's right is to demand and receive it from the trustee as it becomes payable. But this right is absolute. It is directly and definitely enforceable. It has been given the beneficiary and is his property as fully and completely and in all respects as much as anything he owns in fee simple.

The point taken in the opinion, and much stressed in *Nichols* v. *Eaton*, 91 U. S. 716, 718, that creditors may not complain because they have no right to depend upon the gift as available for them in view of their express bar from it, is not well considered. Creditors may well object if their law-given privilege of reaching a debtor's absolute property rights is held to be abridged by the mere declaration of a prior owner. They may look not only to his property at the time the credit is given or liability incurred but as well to that which he subsequently acquires.

The further position in the opinion that if a clause for a cesser or limitation over will accomplish the settlor's scheme, the clause may

well be dispensed with, is also open to criticism. If the creditor loses because the beneficiary loses, that defeats the further operation of the bounty and the scheme is disrupted. If it is the view that a provision for reverter, if creditors seek to take, bars them and at the same time does not terminate the beneficiary's right to the income for the reason that the reverting clause prevents the creditors from taking, it illustrates to what lengths effort has been employed in undertaking to give the extreme spendthrift trust a respectable character. The syllogism is that there being taking, and taking being impossible, nothing is taken. If you take, you lose because you cannot take. You may take, it being yours to take, but if you take, it belongs to someone else. The simple answer is that the event to establish reverter must be of successful taking or must destroy the beneficiary's rights, unless the law is to countenance a verbal device of insensible meaning and application. And a conclusion that because such a provision for reverting can be operative to bar but not to revert, the bar should be effective without the provision for reverting is not to be drawn. The premise is unsound.

The view that the right to seize property is in any way an essential attribute of it which the owner may destroy is considered erroneous. It is an exposure to loss of ownership, and not any part of the makeup of title. It is an instrument of attack upon title, and does not enter into it as a constituent. It is a right, not of the owner, but of the creditor. It is not a quality of property, but is wholly external thereto. It is a burden of incidence, and not of inherence. It is a consequence, and not an element of ownership. It is a public regulation of property beyond private control.

It is only by plausible technique of argument that a settlor may be held to have imparted to the gift to the beneficiary a non-seizable character and quality. "Doing the impossible has always attracted men's thought and energies," and may lead to the paradox of reaching the unreachable. 43 Harv. L. Rev. 63. But a rule built on a paradoxical foundation should have strong and impressive favor before it receives acceptance. Conceding that in the upbuilding of the spendthrift trust doctrine, "the logic of words should yield to the logic of realities," the vital reality is that the settlor has undertaken to say that the beneficiary's property shall not be taken by creditors regardless of statutory ordainment that it may be.

Somewhat strangely, separate and comparative attention to the restraint against alienation and the bar against seizure has been generally overlooked. Without analysis the bar has been accepted

in conjunction with the restraint. When specified a sort of joint mutuality of indivisible union with the restraint has sheltered it. The validity of non-assignability is assumed to invoke the validity of the exclusion of creditors. But such a corollary is not essential to the maintenance of the restraint, nor is it a logical deduction.

Assuming the right of restraining alienation, the trust is not wholly defeated if creditors may reach and take. Alienation signifies total and final loss of the interest aliened, while seizure, in reaching only the income as it accrues, may produce only partial and temporary loss. Alienation may thus be restrained with practical effect although seizure may not be prevented.

If the restraint against alienation is valid, it is because the right to alienate is an inherent element of ownership which the donor may withhold in a gift of the property. When it is said that one owns property or that his creditors may take it, the conception of the law is of rights in relation to the property. The law in this respect is not directly concerned with the physical property which is the subject of ownership, but with the structural elements of title and with interests adverse thereto. If a kind of title devoid of the right of disposal as an element may be a creation of the law, seizure of the title will not supply the omitted element and may not disregard the omission. Seizure is of succession to rights, transferring them without enlargement and with no creation of new ones. The beneficiary not owning the right to alienate, it follows that his creditors may not reach it. They may seize no more than belongs to him.

Courts which have given the bar against seizure equal standing with the restraint of alienation when they are in company, have been consistent in taking another step holding the provision against alienation unnecessary to sustain the validity of the bar against seizure. The restrictions are given unrelated and independent treatment as "limiting the character of the equitable property and inherent in it" (*Eaton* v. *Company*, 240 U. S. 427, 429). *Boston Safe Dep. &c Co.* v. *Luke*, 220 Mass. 484. Not withholding the right to alienate, the settlor yet denies the right of seizure as though it were a quality attaching to the property given. In thus attributing to property the right of creditors to reach it as an element of the owner's title, the vice of the doctrine would seem to be manifest. The right of seizure is no part of ownership. Until exercised it is a menace to the continuance of ownership. When exercised it accomplishes an involuntary loss of ownership. The settlor may not control the subjection of the beneficiary's rights in the trust to the demands of

creditors except by giving the beneficiary rights short of a property interest which by statute may be seized.

The cases are in accord in holding that an owner is unable to bar his creditors from reaching the income of a trust when he has declared the trust and is to have the income, although he may have no creditors when the trust is created. The difference in result when the beneficiary is the settlor and when he is another person is undertaken to be explained in *Pacific Nat'l Bank* v. *Windram*, 133 Mass. 175, 176, by saying that "he undertakes to put his own property out of the reach of his creditors, while he retains the beneficial use of it," whereas in the case of another person as beneficiary, "the founder did not give his property for their [the creditors'] benefit" and "they cannot reach a greater interest in the property than the debtor has, or ever had." This reasoning is largely an undistinguishable difference and again illustrates the shakiness of the spendthrift trust in its extreme form. What is attempted in each case is to treat an attachable interest in property as an attribute of it subject to the owner's control. If the settlor may bar the beneficiary's creditors by withholding from the gift a quality or attribute of title, no good reason appears why he may not secure the same relief for himself. In consistency, if he may hold off creditors of the beneficiary who is other than himself, he should be permitted to dispose of the right as to himself. There being a reversion after his estate in favor of others, then it would seem that they might be regarded as the sole owners, subject only to his inalienable and unattachable equitable life estate as all that he reserves. Otherwise he is allowed to do more for another than he may for himself.

If the statute law permits creditors to reach the rights of the beneficiary, the settlor may not provide that they shall not. He may not take out of the operation of the statute that which it includes. The creditor takes because the statute says he may. The settlor may not attach terms which nullify the statute in its application to the property rights given the beneficiary. No rule of public policy is available to overcome a statutory rule. It is axiomatic that courts do not question the wisdom or expediency of a statute; they may consider public policy only in construing it. Nor may they make exceptions to it in the interest of policy. The equitable title may perhaps include no right of alienation, but creditors are not for that reason deprived of their statutory rights. If they may not reach property thus held, it is only because there is no statute so providing.

Whatever is given the beneficiary is or is not subject to seizure

according to statutory authorization. Nothing is given the creditors of a donee in a gift. The inquiry is whether his rights therein may be taken by them. If they may, the donor may not relieve them from the subjection by asserting their freedom therefrom. An equitable ownership is as available for creditors as a legal one if the statute so prescribes. If the equitable title may be lost or destroyed by the creditor's taking, as the effect of some term of the gift, it is not here of consequence beyond the discussion already had. The instrument of trust contains no provisions of such nature.

Equity may not relieve a "credit" from seizure. No more may an individual. No terms of a gift may free it from its statutory burdens. Whatever equity may do to derogate from the common law, it is equally bound with that law by statutory law. To withhold from the rights of ownership the right of alienation may be proper as an equitable doctrine, or even, in certain situations, as one of the common law. To withhold from them the statutory rights of creditors is a vain thing.

"Credits," as the statutory word in trustee-process to be considered, is to have the meaning in the statute that was intended to be given it. The meaning being an absolute right, equity may not declare such a right not to be one, nor may it transform it into another kind of right and take away its absolute character.

The exemptions from trustee-process are enumerated in a section of the legislation (P. L., c. 356, s. 20). There are no others contemplated, under the usual view that a specification of exceptions omits none. As to the case, "If this is an omission, the courts cannot supply it. That is for the Legislature to do." *Amy* v. *Watertown*, 130 U. S. 320, 327.

While spendthrift trusts are usually regarded as inclusive of all trusts which bar creditors from reaching a life beneficiary's interest, they are in strictness limited to those where the bar arises as the effect of the restraint against alienation and the exclusion of creditors as terms of the instrument of trust. Cases of discretionary trusts and of trusts for support stand on a different principle. In them the bar of the beneficiary's creditors results from the nature of his interest. It is of rights, not in, but to have something done with, property for his personal benefit. In the true spendthrift trust the bar is ordered or directed by the settlor, as an external armor clothing property rights against attack. In all trusts described as spendthrift the purpose to prevent seizure may be found to account for their broad grouping. But the common purpose is not a test of their common

validity. The argument has prevailed that what may be done in one class should be permitted in another. The point is overlooked that it is not what is done, but the result of what is done, that is the determining factor in trusts for support and of a discretionary character. The distinction is important and well recognized. Am. Law Inst., Rest. of Trusts, Tent. Draft, No. 2, ss. 148-152.

"The cases are legion, and the reasoning as diversified as the minds of men," as counsel for the beneficiary has said. The problem may therefore here be regarded as one to be settled by rational principles without undue respect to a weight of authority thus built up. To accept the authority without examination of its reasoning is to adopt a conclusion with inadequate attention to its real merit. Exceptions to doctrines almost axiomatic should be well fortified.

In summary, annuities are a property right of an absolute nature, whether or not their voluntary alienation is permitted. They are therefore credits. By the statute credits may be taken by the creditors of their owners. Assuming the power of equity to restrain the voluntary alienation of an equitable life estate, it has none to restrain the operation of a statute.

Even if the question were not connected with the bearings of legislation relating to seizure, established legal principles are to be followed unless a persistent public policy demands departure from them. The argument that as matter of policy the spendthrift trust should have full recognition and adoption after some partial entrance and admission into the house of the law, is not convincing. Gaining its standing through theories indefensible under principles of regularity and through reasoning logically unsound, it makes no persuasive claim to be welcomed. The policy of protecting a spendthrift at the expense of his creditors is exceptional to the policy yet prevailing in the unwritten law that ability to pay debts requires payment. The statutory guardianship over spendthrifts (P. L., c. 291, ss. 4-6) is designed for their protection as well as that of others, and the contention that the unwritten law needs to make their path easier may well have a doubtful reception. A spendthrift, being one, will spend his income as he receives it. His unrestricted selection of his creditors whom he will pay seems almost a scorn of the law instead of a salutary guard. As has been said, protection and immunity from debts are not the same. One's welfare may be looked out for, but one's property may not be stamped as sealed against creditors. It is one thing to provide for another's needs and comforts, it is another to smooth the ways of improvidence.

When, finally, it is observed that the policy is indifferent to any distinction between beneficiaries who are and who are not spendthrifts in fact, thus enfolding within its arms those needing none of its favor from any standpoint of protection, it is entitled to even less respect. The policy in practice and as developed is thrown aside in complete disregard of its proper limits of application. The argument that anyone may become a spendthrift and thus warrant his treatment as having already become one, is too strained for acceptance. So, also, is the idea that because the spendthrift is primarily the objective beneficiary of the policy, in fairness all others should enjoy his privileges.

Much emphasis has been placed on the interest of the settlor to determine the terms of his gift. This viewpoint has thus been stated: " . . . consideration for the beneficiary does not even in the remotest way enter into the policy of the law; it has regard solely to the rights of the donor. Spendthrift trusts can have no other justification than is to be found in considerations affecting the donor alone. They allow the donor to so control his bounty, through the creation of the trust, that it may be exempt from liability for the donee's debts, not because the law is concerned to keep the donee from wasting it, but because it is concerned to protect the donor's right of property." *Re Estate of Morgan*, 223 Pa. St. 228. Other cases take a like position. *Nichols* v. *Eaton*, 91 U. S. 716, 725, 727; *Broadway Nat'l Bank* v. *Adams*, 133 Mass. 170, 173, 174; *Guernsey* v. *Lazear*, 51 W. Va. 328; *Spann* v. *Carson*, 123 S. C. 371, 391; *Smith* v. *Towers*, 69 Md. 77. "In short, to create a spendthrift trust, it is no longer necessary that the beneficiary be a spendthrift." *Jones* v. *Harrison*, 7 Fed. Rep. (2d) 461, 463.

The policy to attach so great weight to the enjoyment of ownership as to permit the owner to prescribe, in a gift of the property owned, special terms which conflict with the general laws of ownership, has no forceful appeal. By the gift the owner parts with all benefit from the property which he may personally enjoy. Why should he have the right to free the property from a burden resting on it while he owns it, during the term the donee in equity may have it, and thereby give or create rights which he himself does not possess? Besides the conflict with general law, there is also the conflict with the general policy that only those needing protective relief should have it.

The further position is taken that the title of the beneficiary here is a conditional one, the instrument of trust reading that the annuity shall be paid "upon condition only" that it should not be alienated or seized.

The provision against seizure if treated as a condition, would in one view lead to the paradox already discussed if it were a limitation. The reasoning would be: seizure is valid, but if undertaken becomes void, because by operation of the condition it effects a loss of the beneficiary's rights, which, however, are not lost, because the seizure is void. If intended to lead to such a result, the provision as a condition becomes illegal. Since creditors are not barred by direct provision therefor, neither are they by the indirection of a self-conflicting course of procedure.

If the provision is regarded as a condition that a successful seizure shall, subject to it, accomplish a termination of the trust, the result would be an entire loss of further payment of the annuity by reason of a casualty free from anyone's fault. The purpose of the trust would suffer defeat in the deprivation of further payments to the beneficiary. A purpose that if she may not have all, she may have none, is not to be found.

A provision in the words of a condition is not to be construed as one when by another construction the meaning intended by the parties is more probably the real one. *Ashuelot Nat. Bank* v. *Keene*, 74 N. H. 148, and cases cited.

The instrument undertook to provide that creditors should have no rights, without contemplating the chance that they might have some. What was intended was to deny them the right to seize. The right not being given, as thought and intended, any attempt to seize was to be ineffective. A creditor's fruitless effort was not to cause destruction of the annuitant's interest. There can be no breach of a condition in undertaking to do what is impossible, and no condition was intended.

When the restraints are held valid, the generally accepted view is that instead of a retention of rights by the settlor they are suspended or suppressed, in effecting the restraints during the continuance of the trust, if, as here, there are no stated provisions for forfeiture, cessation, or limitation over. The trust has not terminated.

The proceeding as a creditor's bill must be dismissed. The statute (P. L., c. 317, ss. 7, 8) directs that no relief in equity may be granted in respect to "trust funds, where the trust has been created by or the fund has proceeded from some person other than the debtor, and such application may not be made consistently with the trust." But the bill may be amended into an action at law with trustee-process, which may be granted as a new attachment (P. L., c. 332, s. 58). Trustee-process is available to reach funds of the debtor in a fiduciary's

possession. *Quigg* v. *Kittredge*, 18 N. H. 137; *Palmer* v. *Noyes*, 45 N. H. 174; *Watson* v. *Kennard*, 77 N. H. 23.

Whatever the legislative policy in respecting a settlor's provision for barring seizure, the legislation has not affected the trustee-process statute. The enactment that equity may not be invoked to aid the creditor is limited thereto. The trustee-process statute remains un-amended. If it would have been amended had attention been directed to its availability, it is not for the court to make the amendment. The legislative policy is law only to the extent that enactments incorporate it. If it antagonizes a policy of the unwritten law, the latter remains in force until enacted legislation supersedes and overrides it. As the legislation stands, the creditor may reach any credit of the debtor by trustee-process, but he may not apply for equitable relief under the conditions stated.

Without decision of the validity of the restraint of voluntary alienation, the conclusion is that the provision of the instrument against subjection of the annuity to attachment and the beneficiary's indebtedness is a void attempt to make the trustee-process statute inapplicable. The exceptions to evidence are thus moot.

*Case discharged.*

PAGE, J., did not sit: the others concurred.