C. Lee Buxton *v.* Abraham S. Ullman,
State's Attorney

Paul Poe et al. *v.* Abraham S. Ullman,
State's Attorney

Harold Hoe et al. *v.* Abraham S. Ullman,
State's Attorney

Jane Doe *v.* Abraham S. Ullman,
State's Attorney

Baldwin, C. J., King, Murphy, Mellitz and Shea, Js.

Argued October 7—decided December 8, 1959

*Catherine G. Roraback,* for the appellants (plaintiffs).

*Raymond J. Cannon,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellee (defendant) in each case.

BALDWIN, C. J.  The complaints in these four actions seek declaratory judgments as to the constitutionality of § 53-32 of the General Statutes, prohibiting the use of any drug, medicinal article or instrument for the purpose of preventing conception,

and § 54-196, prohibiting the counseling or abetting of such use.[1] The plaintiff C. Lee Buxton is a licensed physician. The plaintiff Jane Doe is a married woman living with her husband. The plaintiffs Paul and Pauline Poe, as well as the plaintiffs Harold and Hanna Hoe, are husband and wife. Except for Dr. Buxton, all the plaintiffs are using, for the purpose of this litigation, fictitious names. They are patients of Dr. Buxton. The plaintiffs claim that the two statutes deprive them of rights guaranteed by the fourteenth amendment to the federal constitution. The defendant demurred to all the complaints; among his grounds were that the plaintiffs were seeking declaratory judgments on legal issues already conclusively determined by this court and that the passage of time and a change in the personnel of the court would not justify a reversal of those determinations. The trial court sustained the demurrers on these grounds, and the plaintiffs have appealed.

A demurrer to a complaint for a declaratory judgment is proper when the facts alleged do not bring the case within the scope of the statute and rules relating to declaratory judgments. General Statutes § 52-29; Practice Book § 277; *Hill* v. *Wright*, 128 Conn. 12, 15, 20 A.2d 388; Maltbie, Conn. App. Proc. § 227; see *Glens Falls Ins. Co.* v. *Somers*, 146 Conn. 708, 713, 156 A.2d 146. If the rights and jural relations of parties in the situation of

---

[1] "Sec. 53-32. USE OF DRUGS OR INSTRUMENTS TO PREVENT CONCEPTION. Any person who uses any drug, medicinal article or instrument for the purpose of preventing conception shall be fined not less than fifty dollars or imprisoned not less than sixty days nor more than one year or be both fined and imprisoned."

"Sec. 54-196. ACCESSORIES. Any person who assists, abets, counsels, causes, hires or commands another to commit any offense may be prosecuted and punished as if he were the principal offender."

these plaintiffs have been conclusively determined by previous decision of this court, the demurrers were properly sustained upon the grounds stated.

Twice in the recent past this court has passed upon questions of interpretation and constitutionality of what are presently §§ 53-32 and 54-196. *State* v. *Nelson,* 126 Conn. 412, 11 A.2d 856, decided March 6, 1940, held that there was no ambiguity in the wording of the statutes which made the legislative intent uncertain so as to permit a construction which allowed an exception in favor of a duly licensed physician who prescribes the use of contraceptive measures to a patient who is a married woman when, in his professional opinion, her general health and well-being necessitate it. We said (p. 417) : "Any intention on the part of the Legislature to allow [the exception claimed] is negatived not only by the absolute language used originally and preserved ever since but also, signally, by [the legislature's] repeated and recent refusals to inject an exception." We held, also (p. 422), that the statute was a valid exercise of the police power. We pointed out (p. 418) that the particular facts alleged in the information confined the issues to situations where, in the opinion of the physician, " 'the general health' of a married woman requires the use of contraceptives." We said that there was, therefore, "no occasion to determine whether an implied exception might be recognized when 'pregnancy would jeopardize life' . . . similar to that usually expressly made in statutes concerning abortion." See General Statutes § 53-29.

In *Tileston* v. *Ullman,* 129 Conn. 84, 26 A.2d 582, decided May 22, 1942, the plaintiff, a licensed physician, brought an action for a declaratory judgment to determine whether the statutes forbade him from

prescribing the use of contraceptives for a married woman in cases where a pregnancy would endanger her life or health and, if the statutes did, whether they were constitutional. This presented the issue which we specifically said was not before us in the *Nelson* case. We held in the *Tileston* case that, in the light of the legislative history of the statutes and the repeated and recent refusals of the legislature to inject any exception, the statutes could not be construed to allow the exception claimed, and that they were constitutional.

It is claimed that the facts in the cases at bar present an entirely different situation with respect to the rights of the plaintiffs from that presented in the *Nelson* and *Tileston* cases. In Buxton v. Ullman, the complaint alleges, in substance, and the demurrer admits, that the plaintiff, a licensed physician, has a patient, Jane Doe, a married woman twenty-five years of age, living with her husband. She had been admitted to the obstetrical service of the hospital where the plaintiff, an eminently qualified obstetrician and gynecologist, was in charge. She was three and one-half months pregnant and developed a condition which brought her to the very brink of death. Her physical condition is now such that conception and another pregnancy would be exceedingly dangerous to her life. She needs and requires advice as to what preventive measures can be taken to avert a recurrence of the experience she suffered. She claims a right to live a normal married life with her husband. She has asked the plaintiff for medical advice, and he has knowledge of drugs, medicinal articles and instruments which could be used by her to prevent conception and avoid the serious consequences of another pregnancy. In a companion case, Doe v. Ullman, the plaintiff is the

patient described in the Buxton case, and she alleges, in substance, the same facts as are alleged in the Buxton complaint. In another companion case the complaint alleges, in substance, that the plaintiffs, Paul and Pauline Poe, are a married couple who have consulted Dr. Buxton. Mrs. Poe, who is twenty-six years old and living with her husband, has borne three abnormal children, no one of whom lived more than ten weeks. The basic cause of these abnormalities is thought by Dr. Buxton and other qualified medical specialists to be genetic, but the prognosis is very uncertain and renders the prospect of another pregnancy extremely disturbing to both Mr. and Mrs. Poe. In still another case the plaintiffs, Harold and Hanna Hoe, aged twenty-nine and twenty-six years, respectively, husband and wife, have no living children. Mrs. Hoe has been delivered of four children. Owing to the blood groupings of these plaintiffs, Mrs. Hoe's blood being Rh negative and Mr. Hoe's Rh positive, the prospects that they can procreate a normal child is highly unlikely.

The plaintiff Buxton has knowledge of drugs, medicinal articles and instrumentalities which could be safely used to prevent conception and avert the dire consequences which have followed conception and pregnancy in the women plaintiffs, who desire to live normal married lives with their husbands. If the plaintiff Buxton, on one hand, applies this knowledge by advising these married people as to available contraceptive measures, and if, on the other hand, these married people accept and follow his advice, the statutes would be violated by all the plaintiffs. It is conceded by the demurrers that the use of contraceptives is, according to medical science, the best and safest preventive measure for the plaintiffs to follow in order to avoid pregnancy.

The plaintiffs claim that these facts raise issues not raised in the *Nelson* and *Tileston* cases. The plaintiff Buxton asserts that he has a constitutional right, distinct from that of his patients, to practice his profession free from unreasonable restraint and to advise and prescribe the use of drugs, medicinal articles and instrumentalities which he believes it to be his professional obligation to prescribe. The facts in the Buxton case differ from those in the *Tileston* case in that here the plaintiff, a physician, is asserting an alleged constitutional right of his own rather than an alleged constitutional right of a patient. Essentially, there is no real difference in the nature of the right. The effect of regulation of a business or profession is to curtail the activities of both the dispenser and the user of goods or services. Both are deprived of some advantage which they might otherwise have. The Doe, Poe and Hoe cases differ from the *Nelson* and *Tileston* cases in that the plaintiffs here are asserting their rights, as patients, to the benefit of a physician's prescription for the use of contraceptives which would relieve them of a dangerous threat to their health and happiness. Their right, too, is essentially the same as that of the physician. In other words, the difference between the *Tileston* and *Nelson* cases and those at bar lies only in the fact that here each plaintiff is asserting his own constitutional right, while in the *Nelson* and *Tileston* cases the doctors were attempting to assert the right of their patients to receive treatment.

It cannot be questioned that the "state may 'regulate the relative rights and duties of all within its jurisdiction so as to guard the public morals, the public safety and the public health, as well as to promote . . . the common good.'" *State* v. *Vachon,*

140 Conn. 478, 481, 101 A.2d 509, quoting from *House* v. *Mayes,* 219 U.S. 270, 282, 31 S. Ct. 234, 55 L. Ed. 213. The exercise of this power is always "subject, in the courts, to the test whether it serves the public health, safety and morals at all and whether it does so in a reasonable manner." *Amsel* v. *Brooks,* 141 Conn. 288, 294, 106 A.2d 152. In our tripartite system of government, the judiciary accords to the legislature the right to determine in the first instance what is the nature and extent of the danger to the public health, safety, morals and welfare and what are the measures best calculated to meet the threat. Courts interfere with legislation enacted under the police power only when it clearly appears that the legislative measures taken do not serve the public health, safety, morals or welfare or that they deny or interfere with private rights unreasonably. *Clark* v. *Town Council,* 145 Conn. 476, 482, 144 A.2d 327; *State* v. *Gordon,* 143 Conn. 698, 703, 125 A.2d 477; *Cyphers* v. *Allyn,* 142 Conn. 699, 705, 118 A.2d 318. It was out of respect for these fundamental principles that this court in the *Nelson* and *Tileston* cases refused to so interpret the statutes as to allow an exception to cover situations of the kind presented in the cases at bar and upheld the constitutionality of the statutes.

If the plaintiffs are correct in their claims, we would be required to follow one of two courses: overrule the *Nelson* and *Tileston* decisions by construing the statutes to include the exception proposed in those cases and thus permit physicians to prescribe, and patients to use, contraceptive measures under circumstances similar to those present in the cases at bar, and by that means sustain the constitutionality of the statutes; or hold that the statutes without the claimed exception are unconstitu-

tional. Since the *Tileston* decision in 1942, the General Assembly has consistently refused to amend the statutes so as to allow physicians to prescribe the use of contraceptive measures.[2] Furthermore, two complete revisions of the general statutes have been approved by the General Assembly and the statutes in question have been left unchanged. Rev. 1949, §§ 8568, 8875; Rev. 1958, §§ 53-32, 54-196. The legislature is presumed to be aware of the interpretation placed upon its legislation by the courts and the effect which its own nonaction thereafter may have.

[2] 1943 Sess. H.B. 313. AN ACT TO ESTABLISH STANDARDS FOR CONTRACEPTIVE DEVICES AND THEIR DISTRIBUTION (blank bill). Referred to committee, H. Jour. p. 194, S. Jour. p. 209; committee recommended rejection and passage of substitute, H. Jour. p. 1299; House passed substitute, H. Jour. p. 1339; Senate rejected, S. Jour. p. 1313; House adhered to former action, H. Jour. p. 1480.

1945 Sess. H.B. 317. AN ACT CONCERNING THE RIGHTS OF PHYSICIANS TO PRESCRIBE FOR THEIR PATIENTS (providing for permitting of physicians to prescribe methods or means for the temporary prevention of pregnancy when necessary to save life or prevent serious injury to health). Referred to committee, H. Jour. p. 263, S. Jour. p. 257; hearing held on May 1, but bill not reported thereafter.

1947 Sess. H.B. 953. AN ACT CONCERNING THE RIGHTS OF PHYSICIANS TO PRESCRIBE FOR THEIR PATIENTS (providing that physicians may prescribe for the temporary prevention of pregnancy when in the opinion of the physician, pregnancy would endanger the life or injure the health of a married woman). After receiving a favorable committee report, House passed, H. Jour. p. 733; Senate rejected, S. Jour. p. 752; House adhered to former action, H. Jour. p. 808.

1949 Sess. H.B. 1110. AN ACT CONCERNING THE RIGHT OF LICENSED PHYSICIANS TO PRESCRIBE FOR MARRIED WOMEN (providing for physicians to prescribe for the health of married women). Referred to committee, H. Jour. p. 307, S. Jour. p. 368; hearings held April 12 and May 3 (executive session) but no indication of a further report.

1951 Sess. H.B. 1483. AN ACT CONCERNING THE RIGHT OF LICENSED PHYSICIANS TO PRESCRIBE FOR MARRIED WOMEN (providing for physicians to prescribe methods or means for temporary prevention of pregnancy in a married woman when pregnancy would endanger the life or injure the health of such married woman). Re-

*Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 63, 111 A.2d 4; *Hurlbutt* v. *Hatheway,* 139 Conn. 258, 263, 93 A.2d 161. Courts cannot, by the process of construction, abrogate a clear expression of legislative intent, especially when, as here, unambiguous language is fortified by the refusal of the legislature, in the light of judicial interpretation, to change it. *Watrous* v. *Connelly,* 141 Conn. 257, 263, 105 A.2d 654; *Herald Publishing Co.* v. *Bill,* supra; *Pennsylvania R. Co.* v. *International Coal Mining Co.,* 230

ferred to committee, H. Jour. p. 273, S. Jour. p. 266; hearing held April 11; bill withdrawn.

S.B. 696. AN ACT CONCERNING THE RIGHT OF LICENSED PHYSICIANS TO PRESCRIBE FOR MARRIED WOMEN (providing for birth control). Referred to committee, S. Jour. p. 192, H. Jour. p. 304; hearing held April 11, but bill not reported thereafter.

H.B. 1485 (same title and content as H.B. 1483). After references to committee by both House and Senate, House passed, H. Jour. p. 717; bill not reported from Senate committee.

1953 Sess. H.B. 1452. AN ACT AMENDING AN ACT CONCERNING THE RIGHT OF LICENSED PHYSICIANS TO PRESCRIBE FOR MARRIED WOMEN. After referral to committee by both the House and Senate, and after a petition was filed to get the bill out of committee, a favorable report was made. House passed, H. Jour. p. 1024; Senate recommitted, S. Jour. p. 942; no report thereafter.

1955 Sess. H.B. 1177. AN ACT CONCERNING THE USE OF DRUGS OR INSTRUMENTS TO PREVENT CONCEPTION (providing for the removal of the prohibition on physicians in the prescribing of the use of contraceptives). House passed, H. Jour. p. 949; Senate rejected, S. Jour. p. 1054.

H.B. 1182. AN ACT CONCERNING THE RIGHT OF LICENSED PHYSICIANS TO PRESCRIBE FOR MARRIED WOMEN (providing for the permitting of licensed physicians to prescribe and others to use and sell contraceptive devices). House passed, H. Jour. p. 954; Senate rejected, S. Jour. p. 1054.

1957 Sess. H.B. 572. AN ACT CONCERNING THE DISSEMINATION OF INFORMATION CONCERNING AND PRESCRIPTION OF CONTRACEPTIVES TO MARRIED WOMEN. House passed, H. Jour. p. 944; Senate rejected, S. Jour. p. 867.

1959 Sess. H.B. 3497. AN ACT CONCERNING PREVENTION OF CONCEPTION PURSUANT TO SPIRITUAL OR MEDICAL ADVICE. Referred to committee, H. Jour. p. 276, S. Jour. p. 292; hearing held April 24, but bill not reported thereafter.

U.S. 184, 198, 33 S. Ct. 893, 57 L. Ed. 1446. In short, courts cannot write legislation by judicial decree; this is particularly so when the legislature has refused to rewrite the existing legislation. The *Nelson* and *Tileston* decisions cannot be overruled by any attempt to reconstruct the statutes.

Since the injection of an exception by construction is legally impossible, can we now hold that the statutes are unconstitutional? By reason of the facts in the instant cases, the claims of infringement of constitutional rights are presented more dramatically than they have ever been before. Basically, the claims are, nevertheless, essentially the same as those which this court considered in the *Nelson* and *Tileston* cases. It may well be that the use of contraceptives is indicated as the best and safest preventive measure which medical science can offer these plaintiffs. That fact does not make it absolutely necessary for the legislature to accept such a solution in all cases, where there is, as pointed out in the *Tileston* case (p. 92), another alternative, abstinence from sexual intercourse. We cannot say that the legislature, in weighing the considerations for and against an exception legalizing contraceptive measures in cases such as the ones before us, could not reasonably conclude that, despite the occasional hardship which might result, the greater good would be served by leaving the statutes as they are.

The plaintiffs' argument raises an issue of public policy. Each of the separate magistracies of our government owes to the others a duty not to trespass upon the lawful domain of the others. The judiciary has a duty to test legislative action by constitutional principles, but it cannot, in that process, usurp the power of the legislature. *State* v. *Gilletto,*

98 Conn. 702, 714, 120 A. 567; *Lyman* v. *Adorno*, 133 Conn. 511, 513, 52 A.2d 702; *General Motors Corporation* v. *Mulquin*, 134 Conn. 118, 132, 55 A.2d 732; *State ex rel. Higgins* v. *Civil Service Commission*, 139 Conn. 102, 111, 90 A.2d 862; *Herald Publishing Co.* v. *Bill*, supra. " 'The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.' " *Van Beeck* v. *Sabine Towing Co.*, 300 U.S. 342, 351, 57 S. Ct. 452, 81 L. Ed. 685, quoting from *Johnson* v. *United States*, 163 Fed. 30, 32; *United States* v. *Cooper Corporation*, 312 U.S. 600, 606, 61 S. Ct. 742, 85 L. Ed. 1071; *Helvering* v. *Wood*, 309 U.S. 344, 347, 60 S. Ct. 551, 84 L. Ed. 796; *Sunshine Anthracite Coal Co.* v. *Adkins*, 310 U.S. 381, 394, 60 S. Ct. 907, 84 L. Ed. 1263; *Butterworth* v. *Boyd*, 12 Cal. 2d 140, 146, 82 P.2d 434; *Collison* v. *State ex rel. Green*, 39 Del. 460, 486, 2 A.2d 97; *McDaniel* v. *Eagle Coal Co.*, 99 Mont. 309, 314, 43 P.2d 655; *Brahmey* v. *Rollins*, 87 N.H. 290, 298, 179 A. 186. We conclude that §§ 53-32 and 54-196 are a constitutional exercise of legislative power.

Although this disposes of the case, we note the claim of the defendant that in the Doe, Hoe and Poe cases the plaintiffs are obviously fictitious persons and it must necessarily follow that the questions sought to be adjudicated are academic and do not apply to any real person or persons. General Statutes, § 52-89, provides, in part, that writs in civil actions shall describe the parties, presumably by their real names, so that they may be identified. Practice Book § 199 states, among other things, that "[i]n the captions of pleas, answers, etc., the parties may be described as John Doe v. Richard Roe et al., but this will not be sufficient in a judgment file, which

must give all the data necessary for use in drawing the execution." Because of the intimate and distressing details alleged in these complaints, it is understandable that the parties who are allegedly medical patients would wish to be anonymous. To obviate any possibility that the parties and the issues raised are fictitious and that the jurisdiction of the court is being invoked to decide moot questions, a plaintiff who desires to use a name other than his own should, before the case is presented in court, acquaint the court of his desires, establish the fact that the parties and issues are real although the names used are fictitious, and secure the court's consent, as was done in these cases. The privilege of using fictitious names in actions should be granted only in the rare case where the nature of the issue litigated and the interest of the parties demand it and no harm can be done to the public interest.

There is no error.

In this opinion the other judges concurred.