Alexander E. ROMAGNANO, Jr. Plaintiff

v.

TOWN OF COLCHESTER, et al, Trooper Brown, Trooper John Doe # 1, Trooper John Doe # 2, Arthur Spada, Commissioner of the Department of Public Safety, and the State of Connecticut, Defendants

No. 3:03 CV 1444(EBB).

United States District Court, D. Connecticut.

Aug. 13, 2004.

A. Paul Spinella, Law Offices of A. Paul Spinella & Associates, Hartford, CT, for Plaintiff.

Robert Bishop Fiske, III, Attorney General's Office, Hartford, CT, for Defendants.

## AMENDED RULING ON MOTION TO DISMISS OF DEFENDANTS TROOPER, BROWN, TROOPER JOHN DOE # 1, TROOPER JOHN DOE # 2, ARTHUR SPADA, AND THE STATE OF CONNECTICUT

### INTRODUCTION

BURNS, Senior District Judge.

Connecticut State Police Troopers Brown ("Brown"), John Doe # 1 ("JD # 1") and John Doe # 2 ("JD # 2"), Commissioner of Public Safety Arthur Spada ("Spada"), and the State of Connecticut (the "State") have moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, failure to state a claim upon which relief can be granted, to dismiss the Complaint in its entirety as to them. The Plaintiff, Alexander Romagnano, ("Romagnano") seeks damages for alleged violations of his constitutional rights under the First, Fourth, and Fourteenth Amendments to the Constitution, each potentially actionable under 42 U.S.C. Section 1983[1] when he was taken into custody pursuant to a valid arrest warrant, issued on the basis of mistaken identity.

### STATEMENT OF RELEVANT FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues in, and the decision rendered on, this Motion. The facts are culled from the Complaint.

Romagnano's claims arise out of his arrest, based on mistaken identity, on April 18, 2002. Defendant Brown, on January 3, 2002, had arrested a man for shoplifting, categorized as Larceny Six charges, who

---

1. Romagnano's original claims also included: Constitutional violations under the Fifth and Sixth Amendments, and various other supplemental state law claims. They are deemed abandoned based on his acknowledgment of the inapplicability of those claims in his Memorandum of Law. Contrary to Defendant's reading of the Complaint, Plaintiff did not allege a cause of action based on intentional infliction of emotional distress but alleged emotional harm as a component of his damages. (Mem. Obj. Defs.' Mot. Dismiss)

wrongfully identified himself as Romagnano. When that arrestee failed to make a court appearance on said charges, a bench warrant was issued for the arrest of Romagnano. The true perpetrator, one of Romagnano's cousins, was the person who was arrested on the larceny charges in question, and who falsely identified himself as Romagnano at that time. At the time of Romagnano's alleged mistaken arrest, his cousin was imprisoned on other larceny charges.

Prior to his arrest, Romagnano was at his place of employment, Electric Boat Corporation, in Groton, Connecticut, where he was an Electric Senior Designer. While on a work break, Romagnano phoned his home answering machine to check his messages, at which time he listened to a message from Brown, calling from Troop K in Colchester, asking Romagnano to return his phone call as soon as possible.

When Romagnano and Brown spoke regarding Brown's message, Brown informed Romagnano of the outstanding bench warrant for Romagnano's arrest. Romagnano explained to Brown that the arrest warrant was a mistake because he had never been arrested for Larceny Six; on the arrest date in question he was at work; and he could prove the mistaken identity if Brown would call Electric Boat to verify Romagnano's work records.

Brown declined Romagnano's offer to call Electric Boat, and insisted Romagnano leave work, and proceed to Troop K in Colchester to speak further about the matter. Romagnano immediately left work, and went to Troop K in Colchester in an attempt to straighten out the issue of mistaken identity.

Upon Romagnano's arrival, Defendant JD # 1 commenced arrest proceedings, without verifying that he was arresting and detaining the right person, and placed him in a holding cell until Brown arrived. Brown arrived and asked Romagnano if he recognized him. Romagnano replied in the negative, stating that he had never seen Brown before. Romagnano attempted to explain the mistaken identity to Brown, and implored him to call Electric Boat to verify his work records. However, Brown refused to call, even though the address on Romagnano's legitimate driver's license was different than the one Brown had retrieved from the true perpetrator's first scheduled court date.

Brown then asked Romagnano if he knew who lived at the address given at the first court date, and if any family was in trouble with the law. Romagnano replied that he had two cousins who, at the time, were in jail for larceny, and Romagnano supplied Brown with their names. Romagnano then asked Brown to compare mug shots of the true perpetrator and himself, and compare the signatures and fingerprints.[2]

Romagnano was left alone in the holding cell for at least another hour until Brown returned with Defendant JD # 2, who re-questioned Romagnano relative to the different addresses and failure to appear at a second scheduled court date. Romagnano continued to deny being the man whom police sought, and again, to no avail, requested that the officers investigate by phoning Romagnano's supervisors at work.

Defendant JD # 2 called Romagnano a liar, and left him in the holding cell. Brown returned several hours later and explained that the address in question belonged to one of Romagnano's cousins. Brown released Romagnano on a two hundred and fifty dollar cash bail, and allowed

**2.** Romagnano's fingerprints are on file with the Federal Bureau of Investigation and De- partment of Defense because his position at Electric Boat required security clearance.

Romagnano his first telephone call. Romagnano called his wife, who in turn had to contact Romagnano's father, to secure the money to post bail.

As a result, Romagnano had to hire counsel to defend himself for the January 3, 2002 shoplifting incident, and he had to meet with his supervisor to explain why he had left work early on April 18, 2002, due to Brown's demand, and his resulting arrest.

All of the charges against Romagnano were subsequently dismissed.

## LEGAL ANALYSIS

### I. Standard of Review

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (*quoting Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)).

Pursuant to a Rule 12(b)(6) analysis, the Court takes all well-pleaded allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the Plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). *See also, Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (Federal Rules reject approach that pleading is a game of skill in which one misstep by counsel may be deci-

sive of a case). The proper test is whether the complaint, viewed in this manner, states any valid ground for relief.

### II. The Standard as Applied

#### Claims against John Doe Defendants

Romagnano's claims against the John Doe Defendants fail due to insufficient service of process under both federal and state law. Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 4(e) provides, in pertinent part, that: "service upon an individual ... may be effected in any judicial district of the United States: (1) pursuant to the law of the state in which the district court is located ...; or (2) by delivering a copy of the summons and the complaint to the individual personally...." Further, Fed.R.Civ.P Rule 4(m) dictates that service must be made upon a defendant within 120 days after the filing of the complaint, or the "court shall dismiss the action without prejudice as to that defendant...."

The naming of John Doe defendants is also improper under Connecticut law, which dictates that "[c]ivil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties...." C.G.S. § 52–45a. The Connecticut Supreme Court has ruled that C.G.S. Section 52–45a "provides in part, that writs in civil actions shall describe the parties by their real names, so that they may be identified." *Buxton v. Ullman,* 147 Conn. 48, 59, 156 A.2d 508 (1959), *appeal dismissed,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989, *reh. denied,* 368 U.S. 869, 82 S.Ct. 21, 7 L.Ed.2d 69 (1961).

■ Romagnano did not properly ascertain the identity of the John Doe defendants [3] and, because the unidentified de-

---

3. On February 23, 2004, Romagnano filed a Request for Leave to File an Amended Complaint to cite in the specific names of the John Doe defendants, which was denied without

prejudice on March 11, 2004, for failure to plead in compliance with the Federal Rules of Civil Procedure, and the local rules of this Court.

fendants were included in the summons and complaint, filed August 26, 2003, Romagnano would have had to serve the them within the 120–day requirement of Fed.R.Civ.P 4(m). As a result, service was never effectuated as to the John Doe defendants under the Federal Rules.

Inasmuch as Romagnano did not properly serve the John Doe defendants under federal or state law, JD # 1 and JD # 2 are hereby DISMISSED from this action.[4]

### Eleventh Amendment Immunity

█ Romagnano's claims against the State, Brown, and Spada, in their official capacities are barred by the Eleventh Amendment. Absent a waiver by the State, or a valid congressional override, the Eleventh Amendment bars any actions against a state in federal court. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Company v. Department of the Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). This bar applies "regardless of the nature of the relief sought."[5] *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The State of Connecticut has not consented to be sued, nor did Congress override Eleventh Amendment immunity in enacting Section 1983. *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Thus, Romagnano's action against the State is hereby DISMISSED.

█ The Eleventh Amendment further protects a state official from suit in his official capacity for monetary damages. *Graham,* 473 U.S. at 170, 105 S.Ct. 3099; *Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Edelman,* 415 U.S. at 663, 94 S.Ct. 1347 (1974). "A suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citations omitted). A cause of action under 42 U.S.C Section 1983 must be brought against a "person", and neither a state agency nor a state official sued in his official capacity for money damages is a "person" within the meaning of 42 U.S.C. Section 1983 *Id.* at 70–71, 109 S.Ct. 2304.

Clearly, Romagnano's claims against Brown and Spada, in their capacities as state officials, are barred by the Eleventh Amendment, and are hereby DISMISSED.

### Failure to State a Constitutional Claim

#### 1. First Amendment

█ Romagnano does not sufficiently allege claims under the First Amendment for consideration of relief by this Court. To properly bring a First Amendment claim, a plaintiff must allege that (1) he has an interest protected by the First Amendment, (2) the statements he made were protected by the First Amendment, and, (3) the defendant's action chilled the exercise of those rights. *Kerman v. City of New York,* 261 F.3d 229, 241–42 (2d Cir.2001), *citing Connell v. Signoracci,* 153

---

4. As noted, dismissal under Rule 4(m) is ordinarily "without prejudice." However, Plaintiff was given full opportunity by this Court to correct his error as to JD # 1 and JD # 2. See FN# 3. He never took advantage of this Court's Endorsement Ruling of March 11, 2004 [Doc. No. 16]. Hence, in this instance, dismissal is with prejudice as to JD # 1 and

JD # 2. In any event, these Defendants would have been dismissed on the merits as is discussed, *infra.*

5. The Eleventh Amendment bar is exclusive of certain prospective and injunctive relief. Romangnano does not state any claim upon which he seeks such relief.

F.3d 74, 79(2d Cir.1998) (citations in *Connell* omitted).

The solitary reference in the Complaint to the alleged deprivation of the First Amendment is as follows:

The Defendant TROOPERS instituted the above-said criminal charges against the Plaintiff without legal cause and factual grounds, in an attempt to conceal their illegal actions, and to hinder the Plaintiff in him [sic] redress of him [sic] injuries and losses through an appropriate civil proceeding, in violation of rights secured to the Plaintiff by the **First** ... and Fourteenth Amendment [sic] to the United States Constitution...."

(Complaint, Count 1, § 29f)

■ The First Amendment to the Constitution provides: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. *U.S. Const. amend. I.* In response to this Motion, Plaintiff cites his statements to the Defendants, denying that he had previously been arrested, suggesting that his employer be contacted, his face be compared to the real arrestee's mug shot, and their fingerprints be compared. The Court cannot discern how Romagnano's First Amendment rights are implicated by the failure of the Defendant officers to act on his suggestions. It is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. Thus, Defendants' Motion to Dismiss the First Amendment claim is GRANTED.

### 2. *Fourth Amendment*

Romagnano claims that Brown, JD # 1, and JD # 2 effectuated an unlawful arrest of him and then deprived him of his rights under the Fourth Amendment. (Complaint ¶¶ 29a; 29c)

■ As to the Fourth Amendment claim of unlawful arrest, probable cause is the single requirement for a lawful arrest under the Fourth Amendment. *See, e.g. Gerstein v. Pugh,* 420 U.S. 103, 120, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Probable cause is presumed when the arrest is made pursuant to a warrant issued by a neutral magistrate. *See Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991). Probable cause is a compilation of "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed...an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). *See also United States v. Lauter,* 57 F.3d 212, 215 (2d Cir.1995) (all an arrest warrant must do is identify the person sought ... the address and other information is immaterial to the determination of whether probable cause existed); *Hill v. California,* 401 U.S. 797, 804, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (when determining whether an officer acted reasonably, courts must remember that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment...").

Although Brown was allegedly mistaken about Romagnano's identity, the Supreme Court has instructed that "[o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause... and in those situations courts will not hold that they have violated the Constitution." *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In addition, a police officer is not required to "investigate independently every claim of innocence, whether the claim is based on mistaken identity or a

defense such as lack of requisite intent." *Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The Supreme Court, in upholding the California Supreme Court, stated that "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill,* 401 U.S. at 802, 91 S.Ct. 1106.

█ Even when construing the facts most favorably to Romagnano, he was arrested based on a facially valid warrant, which is enough to establish probable cause within the purview of the Fourth Amendment.

█ As to the Fourth Amendment malicious prosecution claim, "in order to prevail on a Section 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir.2002). To prevail upon a malicious prosecution claim under Connecticut law, a plaintiff must prove the following elements:

> (1) The defendants initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.

*Lo Sacco v. Young,* 20 Conn.App. 6, 19–20, 564 A.2d 610, (Conn.App.1989) *citing McHale v. W.B.S. Corporation,* 187 Conn. 444, 447, 446 A.2d 815 (1982).

█ As to Romagnano's claims of wrongful detention, "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.'" *Baker,* 443 U.S. at 145, 99 S.Ct. 2689. The *Baker* Court held that a detention of three days over a New Year's weekend did not and could not amount to such a deprivation. *Id.*

█ In this instance, Romagnano was detained for a period of hours, not days. This *de minimis* amount of time is not violative of the Fourth Amendment. Clearly, the valid arrest warrant also defeats the malicious prosecution claim, and Brown is not liable for unlawful arrest or malicious prosecution. Accordingly, this Court holds that, within the mandates of Fourth Amendment jurisprudence, Romagnano sets forth no viable cause of action under that Amendment.

### 3. *Fourteenth Amendment*

█ The Fourteenth Amendment due process claim fails as a matter of law, inasmuch as the Supreme Court has made it clear that all claims that law enforcement officers have falsely arrested a person or conducted some "other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). (Where a particular amendment provides a textual source against a particular act of governmental behavior, that amendment [here, the First and the Fourth], not the more generalized notion of substantive due process, must be the guide for analyzing these claims).

Inasmuch as Romagnano fails to state a legally viable claim under the Constitution, all three constitutional claims against Brown are hereby DISMISSED.

#### 4. *Failure to State Personal Claims Against Brown and Spada*

Romagnano has failed to state a claim against Spada in his personal capacity, due to the absence of any viable causes of action pursuant to the Constitution. The Court having found no constitutional violation, there can be no personal liability of Spada in his role as Commissioner.

### CONCLUSION

Inasmuch as no relief could be granted in this case under any set of facts that could be proved consistent with the allegations, Defendants' Motion to Dismiss [Doc. No. 8] is hereby GRANTED.

### TOWN OF COLCHESTER

Plaintiff's Complaint against the Town of Colchester is DISMISSED for failure to comply with the dictates of Rule 4(m), inasmuch as he has never served the Town, although the Complaint was filed on August 26, 2003. The dismissal is WITH PREJUDICE.

The Complaint contends that "one or more of the Defendant Troopers was the resident trooper for Defendant TOWN OF COLCHESTER and the Defendant TOWN OF COLCHESTER had control and authority of said Defendant(s) in his/her capacity(s) [sic] as a resident trooper for the TOWN OF COLCHESTER."

Under the provisions of Conn.Gen.Stat. § 29–5 the Commissioner of Public Safety, who appoints each resident state policeman, continues to exercise supervision and direction over the appointee who remains a state employee with respect to whose actions the town has neither control nor liability.

The Clerk is directed to close this case.

SO ORDERED