LOUIS S. JACOBSON *v.* MARGARET ROBINGTON ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued January 8—decided February 24, 1953

*David R. Lessler,* for the appellant (named defendant).

*D. Harold Cotter,* for the appellees (defendants Puzinsky et al.).

*Harry B. Dinerstein,* with whom was *Otto H. La-Macchia,* for the appellee (plaintiff).

INGLIS, J. This is an appeal from a judgment of foreclosure by sale and the supplemental judgment

confirming the sale. Aside from a multitude of assignments of error directed at the finding, in none of which is there any merit, the principal claim of the named defendant, hereinafter referred to as the defendant, is that the trial court erred in denying her various motions to open the judgments.

The writ, with the accompanying complaint in the action, was served upon the defendant personally at the Connecticut state prison for women at Niantic, where she was imprisoned, on December 19, 1950. The case was returnable to the first Tuesday of January, 1951, and was brought to foreclose a mortgage of two pieces of real estate and a pledge of some jewelry and 180 shares of the common stock of Success, Inc. The mortgage and the pledge had been given by the defendant to the plaintiff to secure her indebtedness to him of $16,005, evidenced by a promissory note dated July 21, 1949. The complaint alleged that one of the pieces of real estate had been foreclosed by an incumbrancer prior to the present plaintiff. That foreclosure had been by sale and the present plaintiff had received, from the proceeds, $5971.53, which he had credited upon his note. Another defendant in the present action was Archie Puzinsky who, it was alleged, claimed an interest in the stock of Success, Inc.

The defendant failed to enter any appearance and on March 9, 1951, a default was entered against her. On April 13, judgment of foreclosure was rendered, fixing the debt at $11,574.73 and ordering that a sale of the mortgaged and pledged property be held on May 15 unless, prior to that time, the debt with interest and costs and expenses of sale be paid. The sale was held on May 15.

On June 5, before the supplemental judgment was rendered, the defendant through counsel entered her

appearance and filed a motion (1) that the judgment be opened and (2) that the sale of the real estate be confirmed, but (3) that confirmation of the sale of the jewelry and the stock be denied. This motion was denied on June 12, and the supplemental judgment confirming the sale and ordering distribution of the proceeds thereof was rendered on June 15. On June 25 the defendant filed two motions. One was for permission to reargue the motion to open the judgment and for the opening of the judgment. The other was to set aside the confirmation of the sale of the jewelry and the stock. Again, on July 6, she filed another motion to open the judgment, alleging additional grounds therefor. These last three motions were denied on September 10, 1951. The defendant then appealed, stating that "she is aggrieved by the decision of the court in denying her motions to reopen the judgment."

We will not attempt to discuss each motion separately, because the grounds stated in some are repeated in others. We will, however, notice all of the grounds relied upon which merit discussion, irrespective of which motion sets them forth. The court has made a lengthy finding of facts which, as stated above, is not subject to correction. The essential facts found will be stated in connection with the discussion of the various contentions of the defendant to which they respectively pertain.

There is, of course, no doubt that the default was properly entered when the defendant failed to appear on or before the day next after the return day of the writ. General Statutes § 7805. The effect of the entry of the default was to preclude her from making any defense in the action. *Paiwich* v. *Krieswalis*, 97 Conn. 123, 125, 115 A. 720. The judgment of foreclosure upon that default necessarily fol-

lowed. Except where a judgment has been obtained by fraud or where an application is made on the ground of newly-discovered evidence, the power of a court to open a judgment after default is controlled by § 7963 of the General Statutes, which reads: "Any judgment rendered or decree passed upon a default or nonsuit in the superior court, the court of common pleas or any municipal court may be set aside, within four months succeeding the date on which it was rendered or passed . . . upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good defense in whole or in part existed at the time of the rendition of such judgment or the passage of such decree, and that the defendant was prevented by mistake, accident or other reasonable cause from appearing to make the same." Since the statute permits an opening of a judgment after default if there is a showing of reasonable cause, the granting of a motion to open, at least unless it is based on a pure error of law, lies in the sound discretion of the court. *Jartman* v. *Pacific Fire Ins. Co.,* 69 Conn. 355, 362, 37 A. 970. The denial of such a motion should not be held to be an abuse of discretion in any case in which it appears that the defendant has no defense; *Bellonio* v. *V. R. Thomas Mortgage Co.,* 111 Conn. 103, 105, 149 A. 218; or that he has not been prevented from appearing by mistake, accident or other reasonable cause. *Automotive Twins, Inc.* v. *Klein,* 138 Conn. 28, 34, 82 A.2d 146; *Barton* v. *Barton,* 123 Conn. 487, 490, 196 A. 141.

We consider first the question whether the defendant was prevented from entering her appearance by mistake, accident or other reasonable cause. The finding bearing on this question sets forth the following facts: When the process was served on

her, the defendant was confined in prison and remained so confined during the pendency of the case. This, however, did not make it impossible or even difficult for her to communicate with attorneys or retain them. During February, 1951, before the default was entered, she was ill, but her physical condition did not prevent her from entering an appearance. She was an intelligent business woman of wide experience and was fully aware on and after December 19, 1950, that the plaintiff had requested a sale of the security which he held against her indebtedness to him. That was prayed for in the complaint. She had recently had experience in connection with another foreclosure action brought against her by the First National Bank & Trust Company of Bridgeport. At the commencement of that action an attorney who had represented her in other matters had written her twice, stating that he could not represent her and advising her to get other counsel. In spite of that warning, she had not entered an appearance. She then had been defaulted, no notice of the default had been sent her, judgment of foreclosure by sale had been entered and the property had been sold, all without any notice except that which she received from the original writ and complaint. The property foreclosed in that action was one of the pieces mortgaged by her to Jacobson. The complaint in the present action stated she had been credited with the amount which Jacobson had received as a result of the foreclosure sale ordered in the earlier action. Consequently, the fact that there had been a foreclosure by sale in the other proceedings without additional notice to her was known by her. The court justifiably refused to find that she believed that she would receive any notice of proceedings in the action other than that given

her by the service of the original process. The defendant was, therefore, fully apprised that in the present action judgment would enter against her if she failed to appear.

The defendant stresses the fact that the clerk of the Superior Court gave her no notice that the judgment of default had been entered on March 9, 1951. She points to Practice Book, § 195, which provides: "A notice of every nonsuit or default entered by the clerk shall be sent by mail to the party against whom it is directed." If we assume, without deciding, that this rule requires the clerk to give notice of defaults entered by direction of the court as well as those entered by the clerk, pursuant to § 7700 of the General Statutes, without court order, still the failure of the defendant to receive such a notice in this case does not relieve her of culpability in failing to enter her appearance. As already pointed out, her experience with the earlier forclosure action must have indicated to her that a judgment after default would be entered without her receiving any notice of the entry of default.

The court concluded from all the facts found that the failure of the defendant to enter an appearance "was not due to any mistake or accident unmixed with negligence or inattention on her part so as to constitute a sufficient reason to warrant the reopening ... of the judgment." This conclusion was amply warranted and was in itself an adequate reason for the denial of the various motions to open the judgment.

Since that reason was adequate, it is not necessary to advert to the question whether the defendant had a defense to the action. Her counsel has, however, pressed with such vigor his claims that she has certain defenses to the plaintiff's cause of action

that we deem it wise to discuss those claims in order that it may be made clear that no injustice has been done in the case.

The first claim of the defendant is that the plaintiff had no standing to maintain the case because he was no longer the owner of the note and mortgage. The court has found that on November 24, 1950, the plaintiff sold the note and mortgage to the defendant Puzinsky with the express understanding that Puzinsky would institute foreclosure proceedings in the plaintiff's name. The transfer was accomplished by an assignment of the mortgage in the usual form and the indorsement of the note by the plaintiff without recourse. Inasmuch as the note was then past due, it was not negotiated in due course and the purchaser took subject to any defenses which the maker might have had against the transferor. General Statutes §§ 6344, 6350. The transfer of the ownership of the note was, therefore, in essence an assignment of the note. The transfer of the mortgage itself was, without question, by assignment. Since Puzinsky took by assignment, it was permissible for him to maintain the action in the name of his assignor. *Newman* v. *Gaul,* 102 Conn. 425, 435, 129 A. 221; *Smith* v. *Waterbury & Milldale Tramway Co.,* 99 Conn. 446, 451, 121 A. 873.

The defendant also claims that the plaintiff had agreed, at the time the mortgage was given, that if he acquired title to any of the property mortgaged he would give the defendant credit for any profit which he might make upon a resale of that property. It appeared that the plaintiff had bid in one of the mortgaged pieces of real estate in the sale held in the foreclosure of a prior mortgage on it to the First National Bank & Trust Company of Bridgeport and had sold the piece at a profit of $8000. There is,

however, no finding—nor indeed any request for a finding—that the claimed agreement to credit such a profit was ever made. For that reason the claimed defense was not available to the defendant. In this connection it must be noted that the defendant has assigned as error a ruling whereby there was excluded proffered testimony of the defendant herself to the effect that Attorney Steiber, who had arranged the mortgage to the plaintiff and drafted the papers, had told her that the plaintiff would give her the credit claimed by her. This ruling was correct because there was no evidence that Attorney Steiber, if he made such a statement, had any authority to do so on behalf of the plaintiff.

One further contention of the defendant relates both to her claim that the judgment should have been opened and to her claim that the sale of the stock should not have been confirmed. It was found that she and the defendant Puzinsky each owned 180 shares of the capital stock of Success, Inc., and this gave them equal control of the corporation. There was an agreement between them that neither would sell his stock without giving the other the option of purchasing it at book value. It was because Puzinsky had a claim to the stock under this agreement that he was made a party to the action. At the time of the foreclosure, the book value of the defendant's holdings of the stock was about $21,745. The corporation, however, was indebted to Puzinsky in the principal sum of $79,000, of which $59,000 was secured by mortgages on the corporation's real estate. The appraisers appointed by the court valued the defendant's stock at $9900, and this was a fair valuation. There were between forty and fifty persons present at the foreclosure sale. The balance sheet of the corporation was available for

inspection, and a statement concerning the indebtedness of the corporation to Puzinsky was made. Nothing was said about the agreement between the defendant and Puzinsky relative to the stock, but the committee answered all inquiries that were made. Puzinsky was the only bidder for the stock. His bid was $6500, and that was accepted by the committee subject to the court's approval. All steps concerning the sale were legally taken and the sale was fair. The court concluded that, in view of the appraised value of the stock, the sale of it for $6500 was not so grossly inadequate as to warrant the court's denying the confirmation of it.

This conclusion was warranted by the subordinate facts found. In view of all the circumstances, the book value of the stock was illusory. The fact that the stock was under option to Puzinsky added nothing to its value because, under that agreement, he was not bound to take it at book value. There is nothing to cast doubt upon the validity of the appraisal by the unbiased appraisers appointed by the court, and certainly, in the light of that appraisal, the confirmation of the sale was justified.

The further claim of the defendant is that Puzinsky, by instituting the action in Jacobson's name and not disclosing the existence of the agreement between himself and the defendant with reference to the stock, conspired with Jacobson to procure the judgment by committing a fraud upon the court and that the judgment should have been opened for that reason. Such a claim is without any basis. This is true particularly because the court found that no evidence had been produced to establish any such conspiracy and concluded that all the steps taken by the plaintiff in connection with the suit and proceedings were proper, fair and legal. So far as the

finding discloses, neither Jacobson nor Puzinsky did any act which he was not legally entitled to do; nor did either of them conceal any fact which he was in reason bound to disclose.

The sole remaining contention of the defendant which merits attention is that the sale of the stock should not have been confirmed because, after the sale but before the confirmation, she offered to furnish a bond securing the payment by her of whatever balance might be found to be due on the mortgage note after the proceeds of the sale of the mortgaged real property had been credited and after it had been determined whether she was entitled to a credit of the profit made by Jacobson on the resale of the other piece of property already referred to. She did make such an offer. The fact that the offer was made was not a sufficient reason to deny the confirmation of the sale, which had been fairly made. The offer was in no sense a tender of the amount of the debt found due in the judgment. It was not a tender of cash. On the contrary, it was merely the offer of additional security for the debt, and that hedged about by conditions.

To summarize briefly, therefore, the trial court's denial of the motions to open the judgment was well within its discretion, both because the entry of appearance of the defendant was not prevented by mistake, accident or other reasonable cause and because it did not appear that she had any good defense to the action.

There is no error.

In this opinion the other judges concurred.