# AMERICA'S WHOLESALE LENDER *v.* GAIL M. PAGANO ET AL.
## (AC 24447)

Schaller, Dranginis and Berdon, Js.

Argued October 15, 2004—officially released February 15, 2005

*Stephen P. Wright,* for the appellant (named defendant).

*Peter A. Ventre,* for the appellee (substitute plaintiff).

*Opinion*

DRANGINIS, J. The dispositive issue in this appeal is whether a corporation that brings an action solely in its trade name, without the corporation itself being named as a party, has standing so as to confer jurisdiction on the court. We conclude that, because a trade name is not an entity with legal capacity to sue, the corporation has no standing to litigate the merits of the case. We, therefore, reverse the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. On January 22, 2001, the defendant Gail M. Pagano[1] executed and delivered a note in the amount of $45,000 and a mortgage on her real property to the original plaintiff in this action, America's Wholesale Lender (America's). America's is the trade name of Countrywide Home Loans, Inc. (Countrywide), a corporation with its principal place of

---

[1] The Knollwood Homeowners Association, Inc., also was named as a defendant at trial. Because only Pagano has appealed, we refer to her as the defendant.

business in California.[2] On November 27, 2002, America's commenced this action, alleging that the defendant had defaulted on the note and seeking to foreclose on the defendant's property. On February 11, 2003, America's filed a motion to substitute the Bank of New York, as trustee, as the plaintiff in order to reflect an assignment of the note and mortgage that Countrywide had made to the Bank of New York.[3] On February 27, 2003, the defendant filed an objection to the motion to substitute the Bank of New York, as trustee, as the plaintiff, as well as a motion to dismiss. In both the objection and the motion to dismiss, the defendant argued that the court lacked subject matter jurisdiction because America's did not have the legal capacity to sue. The court reserved judgment on the motion to substitute until after it ruled on the defendant's motion to dismiss.[4] The court denied the defendant's motion to dismiss and later granted America's motion to substitute the Bank of New York as the plaintiff. Ultimately, the court rendered summary judgment as to liability in favor of the substitute plaintiff, the defendant's default on the note not being disputed. This appeal followed.

On appeal, the defendant claims that the court improperly denied her motion to dismiss on the basis

[2] The substitute plaintiff, the Bank of New York, indicated in its brief that it did not know in which state Countrywide was incorporated, though, at different times throughout the proceedings, it alleged that Countrywide and America's were incorporated in New York and California. These inconsistencies, however, do not inform our decision in this case, as all parties agree that America's is a trade name by which Countrywide does business and is not a corporation organized under the laws of any state.

[3] Under the law of our state, the assignee of a note may bring an action either in its name or the name of its assignor. See, e.g., *Jacobson* v. *Robington*, 139 Conn. 532, 539, 95 A.2d 66 (1953); *Dime Savings Bank of Wallingford* v. *Arpaia*, 55 Conn. App. 180, 184, 738 A.2d 715 (1999).

[4] "Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 245, 558 A.2d 986 (1989).

of Countrywide's lack of standing to bring an action solely in a trade name. The defendant relied on America's motion to substitute the Bank of New York, as trustee, as the plaintiff, in which America's identified itself as "Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender." The defendant argues that because Countrywide initiated suit solely in its trade name, which is a fictitious name and not a legal entity, Countrywide lacked standing and, consequently, the court lacked subject matter jurisdiction to decide the merits of Countrywide's claim. We agree.

"It is elemental that in order to confer jurisdiction on the court the plaintiff must have an actual legal existence, that is he or it must be a person in law or a legal entity with legal capacity to sue." (Internal quotation marks omitted.) *Isaac* v. *Mount Sinai Hospital*, 3 Conn. App. 598, 600, 490 A.2d 1024, cert. denied, 196 Conn. 807, 494 A.2d 904 (1985). Although a corporation is a legal entity with legal capacity to sue, a fictitious or assumed business name, a trade name, is not a legal entity; rather, it is merely a description of the person or corporation doing business under that name. *Bauer* v. *Pounds*, 61 Conn. App. 29, 36, 762 A.2d 499 (2000). Because the trade name of a legal entity does not have a separate legal existence, a plaintiff bringing an action solely in a trade name cannot confer jurisdiction on the court.

On appeal the substitute plaintiff claims, however, that bringing an action in the name of America's rather than in the name of Countrywide was a misnomer or circumstantial error that, pursuant to General Statutes § 52-123, should not deprive the court of jurisdiction. "Section 52-123 is a remedial statute and therefore it must be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 396, 655 A.2d 759 (1995).

In interpreting this statute, however, we are mindful of the broader statutory scheme. Specifically, we must compare § 52-123 with General Statutes § 52-45a, which our Supreme Court has read to require the use of legal names, not fictitious ones, when commencing an action. *Buxton* v. *Ullman*, 147 Conn. 48, 60, 156 A.2d 508 (1959) ("[t]he privilege of using fictitious names in actions should be granted only in the rare case where the nature of the issue litigated and the interest of the parties demand it and no harm can be done to the public interest"), appeal dismissed sub nom. *Poe* v. *Ullman*, 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961). We recognize that this court, as well as our Supreme Court, has held in numerous circumstances that the mislabeling or misnaming of a *defendant* constituted a circumstantial error that is curable under § 52-123 when it did not result in prejudice to either party. See, e.g., *Andover Ltd. Partnership I* v. *Board of Tax Review*, supra, 232 Conn. 392 (permitting plaintiff to amend citation in order to name town instead of board of tax review as defendant); *Lussier* v. *Dept. of Transportation*, 228 Conn. 343, 636 A.2d 808 (1994) (permitting action to stand when summons indicated action against state instead of action against commissioner of transportation and commissioner of transportation received actual notice). This is true even when the plaintiff used only the defendant's trade name and not the defendant's legal name. See, e.g., *Motiejaitis* v. *Johnson*, 117 Conn. 631, 169 A. 606 (1933) (permitting plaintiff to substitute individual for nonexistent corporation under which individual was doing business); *World Fire & Marine Ins. Co.* v. *Alliance Sandblasting Co.*, 105 Conn. 640, 136 A. 681 (1927) (permitting plaintiff to amend writ to include individual doing business as named defendant). We decline, however, to extend the use of § 52-123 in this manner to a *plaintiff* that has used a fictitious name for *itself* when commencing an action.[5]

---

[5] In *Dyck O'Neal, Inc.* v. *Wynne*, 56 Conn. App. 161, 742 A.2d 393 (1999), we concluded that the court properly permitted the substitute plaintiff to

In reaching our decision, we are mindful of the policies underlying our legislature's requirements for legal entities doing business under fictitious names. General Statutes § 35-1, our trade name regulation statute, requires legal entities doing business in this state under an assumed or fictitious name to file a trade name certification in the town in which such business is to be conducted prior to engaging in such business.[6] We have recognized that while § 35-1 "may provide some protection to persons transacting business under a trade name, it is primarily intended to protect [those doing business with the trade name] by giving them constructive notice of the contents of the trade name certificate." *Metro Bulletins Corp.* v. *Soboleski*, 30 Conn. App. 493, 500, 620 A.2d 1314, cert. granted on other grounds, 225 Conn. 923, 625 A.2d 823 (1993) (appeal withdrawn June 4, 1993). The "object [of the registration requirement] is to enable a person dealing with another trading under a name not his own, to know the man behind the name, that he may know or make inquiry as to his business character or financial responsibility . . . ." *DiBiase* v. *Garnsey*, 103 Conn. 21, 27, 130 A. 81 (1925). As Judge Schaller noted in his dissent in *Metro Bulletins Corp.* v. *Soboleski*, supra, 503, the trade regulation statute, by itself, however, provides only minimal protection to the public because trade name certificates are recorded in any one of the many

amend his designation from Dyck O'Neal individually to Dyck O'Neal, Inc. That case is distinguishable from the present case for two reasons. First, at no time was the plaintiff's true identity concealed; rather, the omission of its designation amounted to an incorrect description of the plaintiff. Furthermore, the record in that case suggested the omission of the plaintiff's designation was a typographical error in the court's judgment file, not an action necessarily attributable to the plaintiff. Id., 164 n.4.

[6] The record in this case shows that Countrywide either did not file a trade name certificate in the town of Berlin, where it conducted business with the defendant, or could not locate such a certificate. The substitute plaintiff claims that filing a trade certificate in the town of Hartford was sufficient. These circumstances further support our decision.

towns across the state. That fact highlights the importance of placing on those who use a trade name the burden of making their identities known to the public. As court filings are a matter of public record, we cannot conclude that *no harm* would come to the public by permitting legal entities to commence actions under fictitious names, as court documents are another means by which the public may ascertain the identity and the character of those with whom they do business. Both § 52-45a and the policy of protecting consumers and creditors from the potential fraud that can arise when legal entities do business under assumed names that may or may not be revealed to those consumers or creditors mandate that plaintiffs not commence an action under a fictitious name except in those extreme circumstances recognized by our Supreme Court in *Buxton* v. *Ullman,* supra, 147 Conn. 48.

The defendant does not argue, nor could she, that she suffered prejudice as a result of Countrywide's commencing this action solely under its trade name. Since the beginning of her relationship with Countrywide, the defendant has conducted business with Countrywide only under its trade name. A lack of subject matter jurisdiction, however, requires dismissal, regardless of whether prejudice exists.[7]

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to dismiss and to render judgment dismissing the complaint.

In this opinion SCHALLER, J., concurred.

BERDON, J., dissenting. I am unable to distinguish this case from *Dyck O'Neal, Inc.* v. *Wynne,* 56 Conn.

---

[7] When the statute of limitations for an action has not run in an action commenced under a trade name, we question the reasonableness of that plaintiff pursuing an action in a trade name, possibly at a defendant's expense, when the plaintiff could withdraw the action and recommence the action under its legal name.

App. 161, 742 A.2d 393 (1999). Indeed, this case presents a scenario even more suitable to the application of General Statutes § 52-123[1] than that presented by *Dyck O'Neal, Inc.* In *Dyck O'Neal, Inc.*, the court put its stamp of approval on the plaintiff's name being amended *after* judgment, finding that it was a circumstantial error within the purview of § 52-123. Indeed, in this case, the mistake was corrected prior to judgment. It is quite obvious, and in fact the trial court found that the original plaintiff in this action, America's Wholesale Lender (America's), intended to bring suit under the name of the owner of the note, which was the Bank of New York, as trustee.[2]

[1] General Statutes § 52-123 provides: "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court."

[2] In its memorandum of decision denying the motion to dismiss filed by the defendant Gail M. Pagano, the court found: "The defendant's motion is based on its claim that [America's] was not a corporation organized under the laws of the state of California, as alleged in paragraph one of the complaint, and therefore it had no standing to bring this suit. At the hearing held on March 24, 2003, it was conceded that America's is a trade name for Countrywide Home Loans, Inc. (Countrywide), and the exact and full title for the plaintiff is America's Wholesale Lender d/b/a Countrywide Home Loans, Inc. From the record, the court concludes that Countrywide Home Loans, Inc., is a valid, legal entity licensed by the department of banking of the state of Connecticut as a first and second mortgage lender. Trade name certificates as required by General Statutes § 35-1 had been filed in some towns within the state, although it was unknown at the time of argument whether one had been filed in the town of Berlin, the location of the real property being foreclosed. The mortgage and note underlying this foreclosure action were in the name of America's and were owned by it until the time of the assignment [to the substitute plaintiff, the Bank of New York, as trustee]. The court also notes that in this instance [that] the defendant received funds from the plaintiff in the trade name now at issue. The plaintiff in the same name received as security for the pledge of repayment of those funds a promissory note as well as the mortgage now being foreclosed that was secured by real property owned by the defendant. Upon the failure of the defendant to pay as provided, the plaintiff instituted a foreclosure action. These facts were uncontroverted.

"The only contrary evidence provided by the defendant in support of her motion to dismiss is attached to the affidavit filed by her. It is a certified copy of the corporate registration in California as of 1995, which evidence

Our Supreme Court held in *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 655 A.2d 759 (1995), the following: "We previously have explained that § 52-123 replaces the common law rule that deprived courts of subject matter jurisdiction whenever there was a misnomer or misdescription in an original writ, summons or complaint. *Pack* v. *Burns*, [212 Conn. 381, 562 A.2d 24 (1989)]. In *Pack*, the plaintiff initially named as the defendant the 'State of Connecticut Transportation Commission,' a nonexistent entity, but then properly served notice of the claim on the commissioner of transportation, as required by General Statutes § 13a-144. We determined that '[t]he effect given to such a misdescription usually depends upon the question whether it is interpreted as merely a misnomer or defect in description, or whether it is deemed a substitution or entire change of party; in the former case an amendment will be allowed, in the latter it will not be allowed.' . . . [*Pack* v. *Burns*, supra] 384–85. In *Pack*, we first considered whether the plaintiff had intended to sue the proper party or whether it had erroneously misdirected its action. Id., 385; see also *Motiejaitis* v. *Johnson*, 117 Conn. 631, 636, 169 A. 606 (1933) (plaintiff permitted to amend writ after verdict, but before judgment to properly name intended defendant). Second, we considered three factors to determine whether the error was a misnomer and therefore a circumstantial defect under § 52-123: (1) whether the proper defendant had actual notice of the institution of the action; (2) whether the proper defendant knew or should have known that it was the intended defendant in the action; and (3) whether the proper defendant was in any way misled to its prejudice. *Pack* v. *Burns*, supra, 385. We concluded in *Pack* that the plaintiff was entitled to

---

the court finds outdated and of no assistance in this inquiry. The court concludes, based on the record, that the entity represented by the trade name had a very real interest in the cause of action and an equitable interest in the subject matter of the controversy."

amend the named defendant under § 52-123 because the plaintiff had intended to sue the commissioner, and because the commissioner, who was not prejudiced by the error, knew he was the intended defendant. Id., 385–86.

"Similarly, in *Lussier* v. *Dept. of Transportation*, [228 Conn. 343, 636 A.2d 808 (1994)], we permitted the plaintiff to amend a summons that misnamed the intended defendant. In *Lussier*, the plaintiff named the 'State of Connecticut, Department of Transportation' as the defendant on the civil summons form instead of the commissioner, as required by § 13a-144. The commissioner was properly named in the complaint, however, and was provided with proper notice of the action. As in the case before us, the plaintiff argued that it merely had stated the defendant's name incorrectly. The defendant argued that the wrong entity had been named as defendant and that the court, therefore, had no subject matter jurisdiction. Id., 350. We distinguished these two categories of error, stating that '[t]he first, involving a defendant designated by an incorrect name, is referred to as "misnomer." It is a circumstantial defect anticipated by General Statutes § 52-123 that can be cured by an amendment. A misnomer must be distinguished from a case in which the plaintiff has misconstrued the identity of the defendant, rather than the legal nature of his existence. When the correct party is designated in a way that may be inaccurate but which is still sufficient for identification purposes, the misdesignation is a misnomer. Such a misnomer does not prevent the exercise of subject matter jurisdiction if the defendant was actually served and knew he or she was the intended defendant.' [*Lussier* v. *Dept. of Transportation*, supra, 350]; see also 1 E. Stephenson, [Connecticut Civil Procedure (2d Ed. 1970)] § 105e, p. 433 (designation of correct party in way which may be inaccurate

but which is still sufficient for identification purposes may be amended).

"Furthermore, we recently determined that an error in the process that failed to comply with a statutory mandate may be corrected under a remedial statute. In *Concept Associates, Ltd.* v. *Board of Tax Review*, [229 Conn. 618, 642 A.2d 1186 (1994)], the plaintiffs, who erroneously specified a return date that fell on a Thursday, sought to amend the return date to fall on a Tuesday, as required under General Statutes § 52-48. We concluded that amendment of process to correct a return date must be permitted as a remedial measure under General Statutes § 52-72. [*Concept Associates, Ltd.* v. *Board of Tax Review*, supra] 623. In addition, we concluded that the language '[a]ny court shall allow a proper amendment to civil process' is mandatory rather than directory and we directed the trial court to grant the plaintiff's request to amend process. Id., 626. Section 52-123 is a comparably worded, remedial statute to which the same principles apply. 1 E. Stephenson, supra, § 35, pp. 137–38 n.608.

"We, therefore, have refused to permit the recurrence of the inequities inherent in eighteenth century common law that denied a plaintiff's cause of action if the pleadings were technically imperfect. As Professor Edward L. Stephenson points out, remedial statutes such as § 52-123 were intended to soften the otherwise harsh consequences of strict construction under the common law: 'Over-technical formal requirements have ever been a problem of the common law, leading [legislative bodies] at periodic intervals to enact statutes . . . which, in substance, told the courts to be reasonable in their search for technical perfection.' [Id.] § 35, p. 137.

"In sum, we decline to interpret § 52-123 in so strict a manner as to deny the plaintiff the pursuit of its complaint. See, e.g., *Hartford National Bank & Trust*

*Co.* v. *Tucker*, 178 Conn. 472, 477–78, 423 A.2d 141 (1979), cert. denied, 445 U.S. 904, 100 S. Ct. 1079, 63 L. Ed. 2d 319 (1980) (court should avoid interpreting rules and statutes so strictly that litigant is denied pursuit of its complaint due to mere circumstantial defects); *Johnson* v. *Zoning Board of Appeals*, 166 Conn. 102, 111, 347 A.2d 53 (1974) (court does not favor termination of proceedings without determination on merits); *Greco* v. *Keenan*, 115 Conn. 704, 705, 161 A. 100 (1932) (same)." *Andover Ltd. Partnership I* v. *Board of Tax Review*, supra, 232 Conn. 396–400.

In this case, the court found that the intended plaintiff was Countrywide Home Loans, Inc., which was doing business under the trade name, America's, in this action, and that the defendant was not misled. Accordingly, I believe we should affirm the trial court's judgment. I therefore respectfully dissent.