******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# ION BANK *v.* J.C.C. CUSTOM HOMES, LLC, ET AL.
## (AC 40424)

DiPentima, C. J., and Prescott and Elgo, Js.

*Syllabus*

The plaintiff sought, by way of a replevin action, to recover certain collateral in the possession of the named defendant that was the security for a promissory note, which had been executed by the named defendant in favor of the plaintiff and on which the named defendant had defaulted. After the named defendant had defaulted on the note, the plaintiff assigned all of its interest in the note to N Co. Thereafter, the plaintiff commenced this action by filing a writ of replevin in which it expressly identified itself as the party entitled to immediate possession of the collateral. Within thirty days of filing the underlying replevin action, the plaintiff filed an amended complaint, attached to which was an amended prejudgment writ of replevin purporting to substitute N Co. as the plaintiff. The defendants subsequently filed a motion to dismiss the action, which the trial court granted, concluding that because the plaintiff had assigned the note to N Co. prior to commencing the replevin action, it lacked standing to bring the action and that the court, therefore, lacked subject matter jurisdiction over the matter ab initio. The trial court also rejected the plaintiff's claims that it had successfully effectuated a substitution of N Co. as the plaintiff by filing its amended complaint, and that as the assignor of the note to N Co., it had standing to maintain the action on behalf of its assignee. From the judgment rendered thereon, the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on its claim that the trial court improperly granted the defendants' motion to dismiss, which was based on its claim that the court should have treated the amended complaint filed by the plaintiff as having cured any defect regarding the plaintiff's standing: the plaintiff's claim that it properly substituted N Co. as the plaintiff by operation of law by filing an amended complaint in compliance with the relevant rule of practice (§ 10-59) was unavailing, as although § 10-59 allows a plaintiff to correct technical or circumstantial defects in a pleading, or to add counts that could have been included in the original complaint, § 10-59 does not confer a right to correct a jurisdictional defect such as standing by allowing the substitution of a new party plaintiff without judicial approval; moreover, the relevant rule of practice (§ 9-20) and statute (§ 52-109) expressly vest discretion in the judicial authority, and not the parties, to permit a substitution of a plaintiff if the court determines that the action was commenced in the name of the wrong party due to mistake and that it is necessary for the determination of the real matter in dispute to allow the substitution.

2. Contrary to the plaintiff's claim, the trial court properly determined that the plaintiff was required to file a motion for permission to substitute N Co. as the party plaintiff and it did not abuse its discretion in declining to treat the plaintiff's amended complaint as such a motion: because the determination of whether to permit the substitution of a party requires an exercise of discretion and an order by the court, our rules of practice required the plaintiff to file a motion accompanied by a memorandum of law requesting that the court issue an order substituting N. Co. as the plaintiff, which the plaintiff did not do; moreover, because the plaintiff's amended complaint neither included nor was accompanied by any request for permission to substitute N Co., it was insufficient to alert the court that the plaintiff was seeking an adjudication and order on the issue of substitution and there was no motion before the court over which it could have exercised its discretion to treat the amendment as a motion to substitute, and the trial court did not consider or make any finding as to whether the action was initiated by mistake, which was essential for it to evoke its discretionary authority to allow a substitution of N Co.

3. The plaintiff could not prevail on its claim that the trial court improperly granted the defendants' motion to dismiss because, as the assignor of the note to N Co., it had standing to maintain the action on behalf of

its assignee: the plaintiff, having assigned the note to N Co., was neither a holder of the note nor a nonholder in possession and, therefore, did not have the authority to enforce the note at the time the action was commenced pursuant to the relevant statute (§ 42a-3-301), and, to the extent that prior case law suggested that an action commenced by an assignor of a promissory note would not fail for lack of standing, this court questioned its continued viability, as it was decided prior to the enactment of § 42a-3-301, and the common law of assignments did not displace the clear provisions of § 42a-3-301 because that statute was directly applicable to the situation underlying the present case; moreover, the plaintiff's initial complaint could not reasonably be construed as an action brought by N Co. in the name of the plaintiff, which had alleged that it was the party entitled to immediate possession of the collateral, and because the complaint was otherwise devoid of any jurisdictional facts that would support a determination that the action was brought by an assignee in the name of its assignor, the plaintiff failed to meet its burden of alleging facts demonstrating that it was the proper party to invoke judicial resolution of the dispute.

Argued December 6, 2018–officially released April 2, 2019

*Procedural History*

Action in replevin to recover certain chattel in the defendants' possession, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Brazzel-Massaro, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Christopher R. LaSaracina*, for the appellant (plaintiff).

*John J. Ribas*, for the appellees (defendants).

*Opinion*

PRESCOTT, J. In this replevin action, the plaintiff, Ion Bank, appeals from the judgment of the trial court granting a motion to dismiss filed by the defendants, J.C.C. Custom Homes, LLC (J.C.C.), Rock On Excavation Services, LLC (Rock On), John C. Ciappetta, and Dawn E. Ciappetta. The court concluded that the plaintiff lacked standing to bring the action because, prior to commencing it, the plaintiff had assigned its interest in the underlying promissory note to Nutmeg Financial Holdings, LLC (Nutmeg), and, therefore, the court lacked subject matter jurisdiction.

The plaintiff concedes that the action was commenced in the name of the wrong party. Nevertheless, the plaintiff claims on appeal that the court improperly granted the motion to dismiss because it (1) failed to consider an amended complaint that the plaintiff filed pursuant to Practice Book § 10-59, which, the plaintiff argues, substituted Nutmeg in as the proper plaintiff by operation of law and, thus, cured any defect regarding standing, (2) concluded that the plaintiff was required to file a motion for permission to substitute in a new plaintiff and failed to treat the amended complaint as a motion to substitute, and (3) failed to conclude that Nutmeg, as the assignee of the note, is entitled to maintain an action either in its own name or in the name of its assignor, the plaintiff. We are not persuaded by the plaintiff's arguments and, accordingly, affirm the judgment of the court.

The following facts, as set forth by the trial court in its memorandum of decision or taken from the complaint and viewed in the light most favorable to the plaintiff, are relevant to our resolution of the present appeal. J.C.C., through it owners, John C. Ciappetta and Dawn E. Ciappetta, executed a commercial promissory note in favor of the plaintiff on December 29, 2010, in the principal amount of $170,000. J.C.C. agreed to repay the loan along with interest and any applicable late charges by January 1, 2016. J.C.C. also executed a commercial security agreement in which it pledged a 2004 Ford F350 pickup truck as collateral for the loan. As additional security for the note, Rock On, a limited liability company also owned by the Ciappettas, executed commercial security agreements providing as collateral a 1981 Kenworth W900 truck, a 1989 East Dump trailer, and a 1998 Caterpillar 416 backhoe. Rock On, John C. Ciappetta, and Dawn E. Ciappetta also executed guarantees assuming liability for repayment of the note.

J.C.C. failed to make the required monthly loan payments and defaulted on the note. Despite demands by the plaintiff for repayment, the defendants did not repay the loan or make the collateral available to the plaintiff.

On June 30, 2016, the plaintiff assigned all of its interest in the note to Nutmeg.[1] Despite the assignment,

the plaintiff, on July 1, 2016, initiated the underlying replevin action against the defendants by service of process.[2] In addition to a prejudgment writ of replevin expressly identifying the plaintiff as the party entitled to immediate possession of the collateral, the process included the requisite affidavit and bond. See General Statutes § 52-518. The return date on the writ was August 9, 2016.

On August 17, 2016, the plaintiff filed a pleading titled "Plaintiff's Amended Complaint," attached to which was an amended prejudgment writ of replevin substituting Nutmeg as the named plaintiff. The amended complaint stated in relevant part: "Pursuant to Practice Book §§ 9-16[3] and 10-59,[4] the plaintiff hereby amends its complaint as of right to amend, among other things, the named plaintiff. The proper plaintiff, [Nutmeg], has acquired the right to collect the debt due, as evidenced by the allonge to the promissory note as alleged in the complaint. Said note is secured by, among other things, the guarantees and security agreements as described in the complaint, and said guarantees and security agreements have been assigned to [Nutmeg] as well. Accordingly, [Nutmeg] is now the proper plaintiff and should be substituted as the sole plaintiff in this action." (Footnotes added.)

On October 14, 2016, the defendants filed a motion to dismiss the action for lack of subject matter jurisdiction. According to the defendants, because the plaintiff assigned the note to Nutmeg prior to commencing the replevin action, it lacked a legal interest in the items it sought to replevy and, thus, lacked standing to commence or maintain the action. The defendants further argued that the plaintiff's attempt to substitute in Nutmeg as the real plaintiff in interest by filing an amended complaint was improper and did not "accomplish the desired substitution."[5]

The plaintiff filed an objection to the motion to dismiss. The plaintiff argued with respect to the issue of standing that (1) Nutmeg was substituted in as the real plaintiff in interest by virtue of the amended complaint it filed pursuant to Practice Book § 10-59, (2) even if it was not entitled to substitute in Nutmeg as a matter of right, the court should treat the amended complaint as a motion to substitute pursuant to General Statutes § 52-109, and (3) it was entitled to maintain the action in its own name despite the assignment of the note to Nutmeg.

The court, *Brazzel-Massaro, J.*, heard argument on the motion to dismiss on December 5, 2016. On March 20, 2017, the court rendered a decision granting the motion to dismiss, concluding that, because the plaintiff lacked standing at the time it commenced the replevin action, the court lacked subject matter jurisdiction over the matter ab initio. The court rejected the plaintiff's argument that, as the assignor of the note to Nutmeg,

it had standing to maintain the action on behalf of its assignee. The court reasoned that, in the present case, the plaintiff "[had given] up all of its rights, title, and interest in the note to Nutmeg on June 30, 2016, and did not have standing to commence suit itself." The court further rejected the plaintiff's argument that it had effectuated a substitution of Nutmeg as the plaintiff by virtue of its amended complaint. The court held that, pursuant to § 52-109, substitution of a plaintiff could only be effectuated if the court determined pursuant to a motion for substitution that the action had been "commenced in the name of the wrong plaintiff through mistake." (Internal quotation marks omitted.) The plaintiff, however, had never filed a proper motion with the court. The plaintiff filed a timely motion to reargue the court's granting of the motion to dismiss, which the court subsequently denied. This appeal followed.

We begin with general principles of law, including our standard of review. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [If] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Citation omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 318, 71 A.3d 492 (2013).

"[B]ecause the issue of standing implicates subject matter jurisdiction, it may be a proper basis for granting a motion to dismiss. . . . The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Citations omitted; internal quotation mark omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 413–14, 35 A.3d 188 (2012). Finally, to the extent that we must engage in the interpretive construction of our rules of practice or related statutory provisions, this

"involves a question of law over which our review is plenary." (Internal quotation marks omitted.) *Parnoff* v. *Yuille*, 163 Conn. App. 273, 281, 136 A.3d 48, cert. denied, 321 Conn. 902, 138 A.3d 280 (2016). With these principles in mind, we turn to the plaintiff's arguments made in support of its claim that the court improperly granted the defendants' motion to dismiss.[6]

I

The plaintiff first argues that the court improperly granted the defendants' motion to dismiss because it should have treated the amended complaint filed by the plaintiff pursuant to Practice Book § 10-59 as having cured any defect regarding the plaintiff's standing. We are not persuaded.

As previously noted, Practice Book § 10-59 provides in relevant part: "The plaintiff may amend any defect, mistake or informality in the writ, complaint or petition and insert new counts in the complaint, which might have been originally inserted therein, without costs, during the first thirty days after the return day. . . ." Practice Book § 10-59 essentially mirrors the language found in General Statutes § 52-128.[7] In seeking to determine the meaning of statutory language, we consider not only the text of the statute but its relationship to other statutes. General Statutes § 1-2z. This same principle applies to our construction of our rules of practice. See *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594, 181 A.3d 550 (2018).

Considered in light of the overall structure of our rules of practice, we do not construe Practice Book § 10-59 as permitting the correction of jurisdictional defects related to parties. Chapter ten of our rules is titled "Pleadings," and, accordingly, contains rules governing the amendment to the substance of pleadings in civil proceedings. By contrast, rules concerning the nonjoinder or misjoinder of parties and, in particular, the substitution of plaintiffs are found in chapter nine of our rules of practice, titled "Parties." "[I]t is a [well settled] principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." *LaFrance* v. *Lodmell*, 322 Conn. 828, 835 n.3, 144 A.3d 373 (2016).

Practice Book § 9-20 specifically addresses the procedure to remedy a defect of the type present in this case: "When any action has been commenced in the name of the wrong person as plaintiff, the judicial authority may, if satisfied that it was so commenced through mistake and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." Practice Book § 9-20. This language is identical to that used in § 52-109, except that where the rule of practice uses the term "judicial authority," the statute uses the

term "court."

Practice Book § 9-20 and § 52-109, thus, expressly vest discretion in the judicial authority, not the parties, to permit a substitution of the plaintiff. As our Supreme Court has explained: "Although a plaintiff's lack of standing is a jurisdictional defect . . . it is a type of jurisdictional defect that our legislature, through the enactment of § 52-109, has deemed amenable to correction and, therefore, not irremediably fatal to an action. . . .

"[Section] 52-109 allow[s] a substituted plaintiff to enter a case [w]hen any action has been commenced in the name of the wrong person as [the] plaintiff, and that such a substitution will relate back to and correct, retroactively, any defect in a prior pleading concerning the identity of the real party in interest. . . . Thus, a substitution of a real party in interest as the plaintiff cures the lack of standing of the original plaintiff . . . and, further, is permissible even after the statute of limitations has run. . . . *An addition or substitution is discretionary*, but generally should be allowed when, due to an error, misunderstanding or misconception, an action was commenced in the name of the wrong party, instead of the real party in interest, whose presence is required for a determination of the matter in dispute." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 552–53, 133 A.3d 140 (2016).[8]

Although the court in *Fairfield Merrittview Ltd. Partnership* held that a defect in standing potentially could be cured by the filing of an amended complaint, it did not hold that a party could cure such a standing defect on its own simply by filing an amended complaint as of right in compliance with Practice Book § 10-59. Rather, our Supreme Court, relying on the express legislative authority granted under § 52-109, concluded that an addition or substitution of a real party in interest as a plaintiff, *if allowed by the court*, would cure the original plaintiff's lack of standing. See id.

The plaintiff notes that § 52-128 and Practice Book § 10-59 authorize a plaintiff to "amend any defect, mistake or informality" in a complaint. Admittedly, read in isolation, that phrase appears broad. Neither the rule nor the statute, however, defines the term "any defect." Moreover, no court has construed Practice Book § 10-59 or § 52-128 as conferring a right to correct a *jurisdictional* defect such as standing by allowing the substitution of a new party plaintiff as a matter of right without judicial approval. Rather, the rule must be construed as a means to permit parties to correct technical or circumstantial defects in the pleading or, as expressly provided in the rule, for adding counts that could have been included in the original complaint.

For the foregoing reasons, we are unpersuaded by the plaintiff's argument that it properly substituted Nutmeg as the plaintiff by operation of law by filing, in compliance with Practice Book § 10-59, an amended complaint within thirty days of the commencement of the action.

## II

The plaintiff next argues that the court improperly concluded that the plaintiff was required to file a motion for permission to substitute Nutmeg as the party plaintiff, and that, even if a motion was required, the court should have treated the amended complaint as a motion to substitute. We disagree with both contentions.

As we have already discussed in part I of this opinion, the court lacks subject matter jurisdiction over an action commenced by a plaintiff without standing. Furthermore, this type of jurisdictional defect cannot be cured simply by resorting to the procedures set forth in Practice Book § 10-59. Other than a dismissal of the action, the only remedy available if the wrong party commences an action is found in § 52-109 and Practice Book § 9-20. Those provisions reflect the discretionary authority of the trial court to substitute the real party in interest as plaintiff if the court determines that due to a mistake—meaning an error, misunderstanding, or misconception—an action was commenced in the name of the wrong party. See *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, supra, 320 Conn. 552–53. Accordingly, because substitution requires some exercise of discretion and an order by the court, the court correctly determined that a party seeking a substitution must file a motion with the court. See Practice Book § 11-2 ("the term 'motion' means any application to the court for an order, which application is to be acted upon by the court or any judge thereof").

The plaintiff did not file a motion asking the court to issue an order substituting in Nutmeg but, instead, filed its amended complaint. The filing of an amended complaint as of right pursuant to Practice Book § 10-59 is not the equivalent of filing a proper motion. The docketing of an amended pleading is insufficient to alert the court that a party is seeking an adjudication and order. Moreover, our rules require that a motion seeking to substitute in a new plaintiff pursuant to Practice Book § 9-20 be accompanied by a memorandum of law "outlining the claims of law and authority pertinent thereto." Practice Book § 11-10. The procedures for filing a proper motion to substitute were not followed here.

The plaintiff nevertheless contends that the court should have treat its amended complaint as a motion to substitute. In support of this argument, the plaintiff relies on our Supreme Court's decision in *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, supra, 320

Conn. 535. That reliance, however, is misplaced.

In *Fairfield Merrittview Ltd. Partnership*, our Supreme Court considered whether, in an action initially commenced by a party lacking standing due to its lack of ownership of the property at issue, the prompt filing of an amended complaint[9] that added a party with standing as an additional plaintiff would be sufficient to confer jurisdiction on the trial court. Id., 551. As we discussed previously, the court concluded that the legislature had deemed such a standing defect, if the result of mistake, amenable to correction at the discretion of the court by way of an amended complaint. Id., 552. As in the present case, the amended complaint filed in *Fairfield Merrittview Ltd. Partnership* was filed within thirty days of the return date on the original complaint. The plaintiff in that case also failed to file a motion to substitute, but there was no contemporaneous objection raised by the defendants to the substitution. Id., 546. Our Supreme Court held that, although captioned as an amendment, the plaintiffs' filing effectively was a motion, which the trial court, in its discretion, granted. Id., 547

In reaching its decision, the court reasoned as follows: "Although the plaintiffs here *captioned the motion that accompanied their amended complaint* as a request for permission to amend, it clearly was, in its substance, a motion to add or substitute a party plaintiff. . . . Moreover, under the undisputed facts and circumstances of the present case, there is no question that the foregoing requirements for an addition or substitution were met. Because the [limited liability company (LLC)] was the sole owner of the property at issue at the relevant time, its addition as a party plaintiff undeniably was necessary for a determination of the matter in dispute, and the naming of the partnership, instead of the LLC, was due to an error, misunderstanding or misconception. The plaintiffs' counsel quickly took action to add the LLC as a party to the proceedings. The defendants have not identified any prejudice that they suffered from the action having been initiated and briefly maintained in the name of the wrong party, and we are unable to conceive of any. In sum, *the trial court properly allowed* the amendment to add the LLC, which cured any jurisdictional defect in the original complaint." (Citations omitted; emphasis added; footnote omitted.) Id., 554–55.

The outcome in *Fairfield Merrittview Ltd. Partnership* is readily distinguishable from the present case and, therefore, does not control the outcome of this appeal. First and foremost, the plaintiffs in *Fairfield Merrittview Ltd. Partnership* did not simply file an amended complaint. Rather, as indicated by our Supreme Court, their amendment was accompanied by a request asking the court for permission to amend the pleadings. In the present case, the plaintiff did not file

a motion to substitute or a motion for permission to amend; it filed a document captioned "Plaintiff's Amended Complaint." Accordingly, there was no motion before the court over which it could have exercised its discretion to treat the amendment as a motion to substitute.

Moreover, the trial court in *Fairfield Merrittview Ltd. Partnership* actually had exercised its discretion to allow a substitution, and the defendants raised no objection to the amended complaint. Id., 552. In the present case, the defendants moved to dismiss the action and objected to the substitution as invalid and inappropriate. Unlike in *Fairfield Merrittview Ltd. Partnership*, the court in the present case never considered or made a finding of whether the action was initiated by "mistake," a finding essential to evoking its discretionary authority to allow a substitution. See *Rana* v. *Terdjanian*, 136 Conn. App. 99, 112, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012). In sum, we agree with the trial court that, in order to substitute Nutmeg as the plaintiff, the defendant was required to file a motion asking the court to exercise its discretion under § 52-109, and the court did not abuse its discretion by failing to treat a portion of the amended complaint as such a motion.

### III

Finally, the plaintiff, citing to our Supreme Court's decision in *Jacobson* v. *Robington*, 139 Conn. 532, 95 A.2d 66 (1953), argues that the court should have concluded that Nutmeg, as the assignee of the promissory note, was entitled to bring an action to recover the property in the name of the plaintiff as its assignor. In other words, the plaintiff argues that the court should have construed the initial complaint as an action brought by Nutmeg in the name of the plaintiff as its assignor. There are a number of flaws in the plaintiff's argument. First, it fails to take into account the provisions of the Uniform Commercial Code (UCC), General Statutes § 42a-3-101 et seq., which was adopted by Connecticut after the decision in *Jacobson*. See General Statutes § 42a-10-101. Moreover, to credit the plaintiff's argument, we would need to interpret *Jacobson* in a manner that conflicts with more recent jurisprudence regarding standing. Although we briefly discuss these issues, it is not necessary for us to resolve them at this juncture because our review of the initial complaint, particularly the allegations made in support of standing, belies any notion that the plaintiff initiated the action in its name as the assignor of Nutmeg rather than on its own behalf.

In *Jacobson*, the defendant appealed from a judgment of foreclosure by sale rendered against him following the entry of a default for failure to appear. *Jacobson* v. *Robington*, supra, 139 Conn. 534. On appeal, the defendant claimed that the court had abused its discretion

by denying a motion to set aside the default and open the judgment of foreclosure because, inter alia, he had a viable defense, namely that "the plaintiff had no standing *to maintain* the case because he was no longer the owner of the note and mortgage." (Emphasis added.) Id., 539. It is important to note that the defendant did not argue that the plaintiff lacked standing at the time he initiated the action. Nevertheless, according to facts set forth in separate portions of the opinion, the plaintiff had assigned its interests in the note and mortgage to a third party on November 24, 1950; id.; but commenced the foreclosure action on December 19, 1950. Id., 534.

Our Supreme Court rejected the defendant's claim that he had a viable standing defense to the foreclosure action, stating that "[s]ince [the third party] took by assignment, it was permissible for him to *maintain* the action in the name of his assignor." (Emphasis added.) Id., 539. The court never acknowledged that the assignment had occurred prior to the commencement of the action or whether there was any legal significance to that fact. Instead, likely due to the procedural posture of the appeal and how the standing issue was presented to the court, the court focused only on whether the action was properly "maintained" and went to judgment in the name of the party that had assigned its interest.

Because the precise issue now before us was not considered or decided by the court in *Jacobson*, it is questionable whether *Jacobson* reasonably may be read as standing for the proposition that the plaintiff claims it does. Significantly, the limited number of appellate courts that have cited to *Jacobson* in resolving an issue of standing have done so in cases in which the plaintiff had assigned its interest in the case after the action properly was commenced. See, e.g., *Citibank, N.A.* v. *Stein*, 186 Conn. App. 224, 245, 199 A.3d 57 (2018) (court had subject matter jurisdiction to adjudicate foreclosure action despite original plaintiff having transferred its interest in note to third party during pendency of action), cert. denied, 331 Conn. 903, A.3d (2019); see also *Dime Savings Bank of Wallingford* v. *Arpaia*, 55 Conn. App. 180, 184, 738 A.2d 715 (1999).

Even if *Jacobson* reasonably could be interpreted as holding that an action *commenced* by an assignor of a promissory note would not fail for lack of standing, *Jacobson* was decided prior to this state's adoption of the UCC, provisions of which undermine the continued viability of such a holding. Article 3 of the UCC governs negotiable instruments, which includes promissory notes. See General Statutes § 42a-3-102 (a). "Where the UCC expressly addresses an issue, the common law does not supplant the code." *Seven Oaks Enterprises, L.P.* v. *DeVito*, 185 Conn. App. 534, 553, 198 A.3d 88, cert. denied, 330 Conn. 953, 197 A.3d 893 (2018). The UCC contains several provisions addressing who has standing to enforce a note. A " '[p]erson entitled to

enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a-3-309 or 42a-3-418(d)."[10] General Statutes § 42a-3-301. Thus, "[u]nder [the applicable provisions of the UCC], only a holder of an instrument or someone who has the rights of a holder is entitled to enforce the instrument. . . . When a note is endorsed in blank, any person in possession of the note is a holder and is entitled to enforce the instrument. . . . If an endorsement makes a note payable to an identifiable person, it is a special endorsement, and only the identified person in possession of the instrument is entitled to enforce the instrument." (Citations omitted; internal quotation marks omitted.) *U.S. Bank, N.A.* v. *Ugrin*, 150 Conn. App. 393, 401–402, 91 A.3d 924 (2014). The assignment of the note to Nutmeg included an allonge making the note payable to Nutmeg. Thus, when the action was commenced, only Nutmeg had the authority under the UCC to enforce the note. To the extent that *Jacobson* can be read to suggest something to the contrary, we question its continued viability.

Our standing jurisprudence since *Jacobson* clearly establishes that a party can only invoke the jurisdiction of the court if it had some legal interest in the subject matter of the action at the time it commenced the lawsuit. Accordingly, if we were to agree that *Jacobson* holds that a party that has assigned its interest in a note could nevertheless bring an action for enforcement of its terms or to collect property securing the note, this would turn much of our standing precedent on its head.

Ultimately, it is not necessary for us to resolve at this time whether an assignor of a note has standing to bring an action seeking to enforce terms of the note on behalf of its assignee because the allegations in the plaintiff's initial complaint cannot reasonably be construed as an action brought by Nutmeg in the name of the plaintiff, Ion Bank. Rather, it is quite clear that the action was brought by the plaintiff in its own name. It is axiomatic that "[i]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 213–14, 982 A.2d 1053 (2009). In the plaintiff's initial complaint, it alleged that it had "a right to immediate possession of the collateral." The complaint contained no allegations that the plaintiff had assigned to Nutmeg its interest in the note and in the collateral securing that note, and that the plaintiff was bringing the action, not in its own name, but on behalf of Nutmeg as Nutmeg's assignor. Because the complaint is devoid of any jurisdictional facts that

would support a determination that the action was brought by an assignee in the name of its assignor, it is not necessary to resolve whether the court would have had standing if such allegation had been pleaded.

In sum, the plaintiff, which had the burden of alleging facts sufficient to establish a specific, personal and legal interest in the property it sought to replevy, could not properly do so because it had transferred all of its interest in the note to Nutmeg prior to commencing the underlying action. Its subsequent attempt to amend the complaint to remedy the jurisdictional defect without first obtaining permission of the court to substitute Nutmeg as the plaintiff was ineffective, and, accordingly, the court properly granted the motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On August 16, 2016, the plaintiff also assigned to Nutmeg the security agreements and guarantees. The plaintiff has not argued on appeal that the late assignment of the secondary obligations is relevant to the issue of standing and, therefore, we do not address whether the assignment of the note also effectively operated as an assignment of the secondary obligations underlying it. See *Jenzack Partners*, *LLC* v. *Stoneridge Associates*, *LLC*, 183 Conn. App. 128, 137, 192 A.3d 455, cert. granted, 330 Conn. 921, 193 A.3d 1213 (2018), and cert. denied, 330 Conn. 921, 194 A.3d 288 (2018).

[2] Replevin actions are governed by General Statutes § 52-515 et seq. General Statutes § 52-515 provides: "The action of replevin may be maintained to recover any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner, together with the damages for such wrongful detention." Accordingly, to prevail in a replevin action, a plaintiff must plead and establish not only that the items sought are goods or chattels wrongfully detained by the defendant, but that the plaintiff has a property interest in the items and a right to immediate possession. See *Cornelio* v. *Stamford Hospital*, 246 Conn. 45, 49, 717 A.2d 140 (1998).

[3] Practice Book § 9-16 provides: "If, *pending the action*, the plaintiff assigns the cause of action, the assignee, *upon written motion*, may either be joined as a coplaintiff or be substituted as a sole plaintiff, as the judicial authority may order; provided that it shall in no manner prejudice the defense of the action as it stood before such change of parties." (Emphasis added.) Because the plaintiff assigned the note to Nutmeg prior to the commencement of the action, rather than during its pendency as contemplated by Practice Book § 9-16, this rule is inapplicable.

[4] Practice Book § 10-59 provides in relevant part: "The plaintiff may amend any defect, mistake or informality in the writ, complaint or petition and insert new counts in the complaint, which might have been originally inserted therein, without costs, during the first thirty days after the return day. . . ."

[5] The defendants also argued as an additional ground for dismissal that the plaintiff already had commenced an action to foreclose a mortgage on real property securing the same debt; *Ion Bank* v. *J.C.C. Custom Homes*, *LLC*, Superior Court, judicial district of Waterbury, Docket No. UWY-CV-14-6025446-S (February 16, 2017); and, therefore, the present action was barred by the prior pending action doctrine. We note that a judgment of strict foreclosure and a deficiency judgment were rendered in that action in 2017. The trial court did not address this claim and the defendants have not raised it as an alternative ground for affirmance.

[6] We address the plaintiff's arguments in the order that they were briefed in its principal brief.

[7] General Statutes § 52-128 provides: "The plaintiff may amend any defect, mistake or informality in the writ, complaint, declaration or petition, and insert new counts in the complaint or declaration, which might have been originally inserted therein, without costs, within the first thirty days after the return day and at any time afterwards on the payment of costs at the discretion of the court; but, after any such amendment, the defendant shall have a reasonable time to answer the same."

[8] "[I]t is well within the authority of a court to permit a substitution of

plaintiffs in lieu of dismissing an action provided that the court determines that the conditions set forth in § 52–109 have been met. . . . [I]f § 52-109 is to have the ameliorative purpose for which it was intended, then even assuming that the specter of subject matter jurisdiction rears its head, the statute is meant to give the trial courts jurisdiction for the limited purpose of determining if the action should be saved from dismissal by the substitution of plaintiffs." (Internal quotation marks omitted.) *Rana* v. *Terdjanian*, 136 Conn. App. 99, 111, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012).

[9] The "complaint" in *Fairfield Merrittview Ltd. Partnership* was an administrative appeal of a municipal property tax assessment.

[10] Section § 42a-3-301 (iii) concerns enforcement of lost or stolen notes and other situations not applicable here.

_____